2005 ME 10

**Marguerite M. BARTLETT**

v.

**Timothy J. ANDERSON.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Dec. 8, 2004.

Decided: Jan. 18, 2005.

Ronald P. Lebel, Esq., Skelton, Taintor & Abbott, P.A., Auburn, for plaintiff.

Kenneth P. Altshuler, Esq., Childs, Rundlett, Fifield, Shumway & Altshuler, LLC, Portland, for defendant.

Panel: RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Timothy J. Anderson appeals the judgment of the District Court (Portland, *Eggert, J.*) addressing Marguerite M. Bartlett's motion for post-divorce relief regarding change of child support obligations, parental visitation, repayment of arrearages, and attorney fees. Anderson contends that the District Court erred in (1) finding an arrearage resulting from the Department of Human Services's [1] unilat-

---

**1.** As a result of enactment of P.L.2003, ch. 689 (effective July 1, 2004), the Department of Behavioral and Developmental Services and the Department of Human Services have been

eral reduction in withholding and paying over child support payments after the parties' oldest child turned eighteen; (2) not ordering a retroactive amendment of the child support order to the time when the oldest child turned eighteen; and (3) awarding attorney fees. Finding no error in the court's decision on the child support and attorney fees issues, we affirm.

## I. CASE HISTORY

[¶ 2] The parties married in 1982. During the course of the marriage, they had three children; Elizabeth (D.O.B.4–24–83); Isaac (D.O.B.7–17–89); and Samuel (D.O.B.6–15–94). In analysis of the issues in the case, the dates of birth of the children are important, as are the dates when they reached child support transition ages.

[¶ 3] The parties were divorced by an order of the District Court (*MacNichol, J.*) in September 1995. A child support order issued in November 1995, covering all three children and requiring Anderson to pay child support of $111 per week. Primary physical residence of the children was with Bartlett. In late 1998, both parties filed motions to modify or for post-judgment relief. The motions were occasioned by Anderson's failure to make certain payments required by the divorce judgment and Bartlett's relocation to Virginia with the three children.

[¶ 4] Following a hearing, the court (*Saufley, J.*) entered an order that (1) made a number of changes in parental rights and responsibilities and the visitation schedule; (2) found that Anderson had obligations and debts to Bartlett arising from the original divorce judgment, totaling $9818.92, resulting from various post-divorce transactions; (3) established a repayment schedule for the arrearages; and (4) increased Anderson's child support ob-

ligation to $200 per week effective July 9, 1999. Pursuant to a separate income withholding order, the $200 per week required payments were collected by the Department of Human Services and paid over to Bartlett.

[¶ 5] Anderson made no payments of the arrearage as required by the schedule set in the 1999 order until early 2003. At the time of the 2004 court hearing, he had made payments totaling $3500 toward those arrearages.

[¶ 6] The parties' oldest child, Elizabeth, turned eighteen in April 2001 and graduated from high school in June 2001. After Elizabeth graduated from high school, the Department of Human Services unilaterally reduced the weekly amount withheld from Anderson's salary and paid over to Bartlett for child support from $200 to $133; a one-third reduction. No unilateral increase occurred when Isaac turned twelve in July 2001. No effort was initiated to amend the 1999 court order. Anderson did not pay the difference between the withheld $133 and the $200 per week ordered by the court, because he believed that there was an automatic reduction in child support as a result of the oldest child turning eighteen and graduating from high school.

[¶ 7] Anderson remarried in 2002. His wife was also employed, and they shared household expenses. There was no unilateral increase in child support payments when Anderson began sharing living expenses.

[¶ 8] In March 2003, Bartlett filed a motion for post-judgment relief, seeking (1) an assessment of arrearages for unpaid child support and on past arrearages as ordered by the 1999 judgment; (2) an increase in child support due to the changes in the children's ages and the

merged into the Department of Health and Human Services.

parties' economic circumstances; and (3) a change of certain parental rights arrangements and visitation schedules.

[¶ 9] Subsequent to the filing of the motion, Anderson was terminated from his position as a sales manager at an office supply store. That position, in its last year, had paid him approximately $50,000 annual income. By the date of hearing, Anderson had found a part-time warehouse job and was restarting a career as a self-employed carpenter that he had pursued prior to 1997.

[¶ 10] After a hearing on the motion for post-judgment relief, the District Court (*Eggert, J.*) entered orders addressing a number of the issues from the post-judgment hearing. First, it determined that Anderson remained obligated to pay child support at a rate of $200 per week, despite the Department of Human Services's unilateral reduction in his withholding to $133 a week. It further found that this obligation to pay $200 per week continued until February 27, 2004, and, as a result, Anderson had accumulated an arrearage of past due child support of $9332.40. The court ordered this arrearage repaid at a rate of $100 per month. The court imputed to Anderson an earning capacity of $30,000 per year, using Bureau of Labor Statistics data for the median salary for a retail store sales manager in Maine. With this income figure established, the court reduced Anderson's weekly child support obligation to $140.86 and made the reduction retroactive to February 27, 2004, the week after his salary payments from the office supply store had ceased.

[¶ 11] Separately, the court determined that Anderson continued to owe approximately $9000 in principal and interest that was unpaid on the past due obligations identified in the 1999 order. The court ordered these arrearages to be repaid at a rate of $100 per month. The court also changed the summer visitation schedule and ordered that Anderson pay Bartlett $2500 towards her attorney fees, with this sum to accrue no interest and to be paid at a rate of $50 per month. Following that order, Anderson brought this appeal.

## II. LEGAL ANALYSIS

### A. Child Support

[¶ 12] Anderson contends that the law relating to child support contains a self-executing provision that automatically amends a court order to reduce child support when a child turns eighteen and graduates from high school. Accordingly, he contends that the Department of Human Services correctly reduced his withholding by one-third and that he accumulated no arrearages by not thereafter paying the $67 difference between the amount withheld and the $200 per week child support ordered in 1999. To support that proposition, he cites 19–A M.R.S.A. § 1653(12) (1998) which states:

> **12. Termination of order.** A court order requiring the payment of child support remains in force as to each child until the order is altered by the court or until that child:
>
> A. Attains 18 years of age. For orders issued after January 1, 1990, if the child attains 18 years of age while attending secondary school as defined in Title 20–A, section 1, the order remains in force until the child graduates, withdraws or is expelled from secondary school or attains 19 years of age, whichever occurs first;
>
> B. Becomes married; or
>
> C. Becomes a member of the armed services.

[¶ 13] For a child turning eighteen and graduating from high school who is the only child covered by a particular child support order, and thus the beneficia-

ry of one hundred percent of the court-ordered child support, the provisions of section 1653(12) are self-executing. For a child in such circumstances, a child support payment obligation ceases when the child turns eighteen and graduates from high school. Section 1653(12) also is effective to terminate particular payment obligations specific to a child who turns eighteen and graduates from high school, where several children are covered by a single child support payment obligation. However, section 1653(12) specifies no formula or method to adjust payment obligations when one child, among several covered by a single, undifferentiated child support payment obligation, reaches age eighteen. As this case and the child support guidelines demonstrate, the payment obligation for two children is not automatically two-thirds of the payment obligation for three children.[2] Therefore, there is no basis for any party to make a unilateral adjustment of the payment obligation without court approval.

[¶ 14] Anderson cites no authority to support the contrary proposition that an automatic adjustment must occur when there is an undifferentiated child support order covering three children. The very next section of the statute allows courts to include, in child support orders, automatic increase or decrease features when children reach certain ages. Thus, 19–A M.R.S.A. § 1653(13) (1998) states:

13. **Automatic adjustments.** The order of the court or hearing officer may include automatic adjustments to the

amount of money paid for the support of a child when the child attains 12 or 18 years of age; or when the child graduates, withdraws or is expelled from secondary school, attains 19 years of age or is otherwise emancipated, whichever occurs first.

[¶ 15] If section 1653(12) was intended to be self-executing for orders covering several children, the references in section 1653(13) to eighteen-year-olds would be unnecessary.

[¶ 16] In this case, as was proper, the 1999 post-judgment order could have but did not include any provision for automatic adjustment contemplating an increase when Isaac turned age twelve in July of 2001, or a decrease when Elizabeth graduated from high school after turning eighteen in June of 2001. *See* 19–A M.R.S.A. § 2006(6) (1998). Bartlett asserts that, had these calculations been made in 2001, the net effect would have been to increase Anderson's child support obligation to $216. Considering Anderson's 2001, 2002, and 2003 income, his remarriage, and Isaac's turning twelve, a change in child support obligations, retroactive to June 2001, might well have resulted in an increased child support obligation from July 2001 to early 2004. Notably, it was Bartlett, not Anderson, who filed the motion to modify child support in 2003.

[¶ 17] Modification of court-ordered child support is governed by 19–A M.R.S.A. § 2009 (1998). Subsection (1) requires a motion and a court order to

---

2. For example, the child support guidelines indicate that for a couple with a combined annual income of $85,200, the basic support obligation for three children, ages twelve to seventeen years, is $387 per week, while the basic support obligation for two children, ages twelve to seventeen is $332 per week. At the same income level, the basic support obligation for one of three children under age twelve is $105 per week, while the basic support obligation for one of two children over age twelve is $166 per week. Child Support Table, *Maine Court Rules* 207 (State ed.2004). From this basic support obligation, actual child support obligations are calculated based on the relative income and obligations of the parents.

achieve a modification. Subsection (2) prohibits retroactive modification of child support orders to amend any payment obligations for times prior to notice to the opposing party of the petition for modification. Subsection (1) authorizes DHS to petition for a modification when it seeks to change payments required by a court order. There is no authorization for a unilateral change in court-ordered support, without court approval, in an order covering more than one child, except for the change contemplated by a court order pursuant to section 1653(13). Thus, the District Court properly concluded that for the undifferentiated child support order covering three children, section 1653(12) did not accomplish a self-executing reduction in the $200 a week child support order for all three children when Elizabeth graduated from high school in June 2001. The $200 a week payment obligation continued until modified by the court.

[¶ 18] Anderson also contends that the court erred by declining to make his reduced child support obligation, or significant portion of it, retroactive to the date of Elizabeth's graduation from high school. In support of this proposition, Anderson principally cites *Wood v. Wood*, 407 A.2d 282 (Me.1979). The principal holding of *Wood*, adopted by 19–A M.R.S.A. § 2009(2), was that child support modifications should only be allowed prospectively from the time of filing of service or notice of the motion seeking the change. 407 A.2d at 287. Were the law otherwise, allowing retroactive modification, *Wood* observed that: "The parent paying support would be encouraged to reduce support payments unilaterally whenever he believed a change of circumstances justified a reduction." *Id.* Anderson cites an exception to the rule recognized by *Wood* for circumstances, such as emancipation or majority, where a *custodial* parent may be

relieved of the obligation to provide support to a child, and requiring continued support would be "a windfall to the custodial parent." *Id.* at 287–88. Such is not the case here. The support order covered two other children, one of whom qualified for an increase in support upon turning twelve in 2001.

[¶ 19] Thus, the court was not required to make the retroactive reduction Anderson seeks. It was prohibited by section 2009(2) from making any retroactive reduction for any time preceding Bartlett's March 2003 motion to modify. The court's choice to reduce child support was based not on Elizabeth's graduation from high school, or Isaac's turning twelve, but on the change in Anderson's income resulting from loss of his store manager job.

[¶ 20] In its child support calculations, the court also considered that Isaac was now twelve years old (actually fourteen at date of hearing), thus justifying a higher level of child support, and that Anderson was sharing household expenses with his wife, another factor resulting in an increase in Anderson's obligation under the child support guidelines. *See* 19–A M.R.S.A. § 2007(3)(J) (1998). Because Anderson filed no motion seeking to modify child support, the court acted appropriately in making its change in child support requirements retroactive only to the time when Anderson's income from the office supply store ceased.

B. Attorney Fees

[¶ 21] Anderson asserts that because Bartlett is now earning income of approximately $40,000 a year while he has income of only $30,000 a year imputed to him, it was inappropriate for the court to award Bartlett $2500 towards her attorney fees. Attorney fee awards are reviewed for a sustainable exercise of discretion. *Murphy v. Murphy,* 2003 ME 17, ¶ 29, 816

A.2d 814, 823. Beyond making the award, the court indicated no findings as to why such an award was justified. Anderson did not request any findings. The court could have reasonably concluded that an award of attorney fees was justified because the post-judgment motion, at least as to the economic issues, was largely generated by Anderson's failure to pay significant sums of money—over $18,000 total—that were due and owing to Bartlett as a result of the 1999 order and the arrearages in child support payments due to the unauthorized unilateral reduction in payments that occurred in 2001. This failure to pay had continued during the more than four years that Anderson had held a relatively well-paying job. In the circumstances, the award of attorney fees was not outside of the range of the trial court's discretion.

The entry is:

Judgment affirmed.