1999 ME 114

**Kerry GLEW**

v.

**Robert GLEW.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 17, 1999.

Decided July 21, 1999.

John S. Campbell, Campbell & McArdle, P.A., Portland, for plaintiff.

Timothy E. Robbins, Portland, Judy R. Potter, Cape Elizabeth, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

DANA, J.

[¶ 1] Robert Glew appeals from a judgment of the Superior Court (Cumberland County, *Mills, J.*) affirming the judgment of the District Court (Portland, *Beaudoin, J.*) ordering him to pay back child support. He argues that (1) the District Court erred in interpreting the child support provision of the settlement agreement, (2) the settlement agreement as interpreted violates public policy, and (3) the doctrine of laches bars the claim for back child support. We affirm the judgment.

[¶ 2] Robert and Kerry Glew were married in 1980 and divorced in 1990. The couple had one child, Casey, born in 1982. The Glews entered into a settlement agreement governing child support payments. The court approved the agreement

and incorporated it in the divorce judgment. The judgment provides that Robert "shall initially pay to" Kerry $46 per week for child support. With respect to future child support, the judgment provides:

> The total support obligation and [Robert's] proportion thereof shall be recomputed at the end of each calendar year using the appropriate figures from the just completed calendar year. Said recomputed weekly support obligation shall then become the weekly support obligation for the ensuing year. If the weekly support obligation so computed is greater than the actual weekly child support paid for the just completed calendar year, [Robert] shall also pay to [Kerry], as an adjustment in child support, a weekly sum equal to the difference between the recomputed weekly child support and the actual weekly child support paid.

The judgment requires both Robert and Kerry to provide to the other, on request, copies of income tax returns for any year being recomputed. The judgment does not state how the parties are to recompute the child support payments. The parties agree that Robert has paid $46 per week in child support since the divorce judgment.

[¶ 3] In 1997, Kerry filed a motion to enforce the child support obligation and for back child support. Kerry contended that she and Robert agreed, at the time of the settlement agreement, to use the child support guidelines created by the Department of Human Services, which take into consideration the number of children; the age of the child, the parents' combined annual gross income, and each parent's annual gross income. *See* 19 M.R.S.A. § 303–A (Supp.1989), *repealed by* P.L. 1989, ch. 834, § B–7 (effective Apr. 17, 1990).[1] Kerry argued that based on the child support guidelines and Robert's increased income, he owed her a substantial arrearage.

[¶ 4] In November 1997, after a hearing, the District Court entered a judgment against Robert for a child support arrearage of $35,426.20 which includes interest for the years 1992 through the date of the

---

1. Title 19 M.R.S.A. § 303–A provided in pertinent part:

 **Guidelines for child support awards**

 ....

 2. **Child support table established.** The Department of Human Services shall adopt rules ... establishing a child support table by October 12, 1989.

 3. **Criteria for application of table.** The Supreme Judicial Court shall adopt rules establishing criteria for application of the child support table for use in judicial proceedings to establish child support by October 12, 1989, which rules shall provide that consideration shall be given to the relative periods of time which a child spends with each parent and the relative consequential financial burden this places upon each parent. The Department of Human Services shall adopt rules ... establishing criteria for application of the child support table for use in administrative proceedings to establish child support by October 12, 1989. The criteria for application of the child support table must provide that the total child support obligation shall be divided between the parents in proportion to their respective gross incomes.

 4. **Support guidelines.** The support guidelines must be based on the concept that children should receive the same proportion of parental income after separation or divorce of their parents as they would receive if their parents were living in one household. Except in cases of default or when good cause is shown, the support guidelines shall not result in a total support obligation that would reduce a responsible parent's income to below the income level protected by section 502.

 5. **Presumption.** There shall be a rebuttable presumption in any judicial or administrative proceeding in which child support may be established or modified, in which a hearing is held, on or after October 12, 1989, that the amount of the award which would result from the application of the support guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the support guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case if the finding is made under criteria established under this section.

 ....

judgment plus $416 representing the claimed arrearage for 1991 plus an indication that Kerry was entitled to statutory interest on this latter amount. The court concluded:

> The divorce judgment sets forth a formula for computing child support derived by agreement of the parties and incorporated into the judgment. This formula, at least by implication, contemplates use of the child support guidelines tables without any reference to any potential deviations. This formula is enforceable even though it does not exactly conform to the child support guidelines.

The court ordered that Robert pay child support of $163 per week from November 7, 1997, to the end of 1997, at which time the child support would again be computed for 1998 pursuant to the divorce judgment. The Superior Court affirmed the judgment and this appeal followed.

### I.

 [¶ 5] A settlement agreement that the court incorporates into a divorce judgment becomes part of the judgment. *See Murphy v. Murphy*, 1997 ME 103, ¶ 8, 694 A.2d 932, 934. "A court's construction of a divorce decree, like any judgment, must be consistent with the language read as a whole and objectively supported by the record." *Id.* We review de novo the interpretation of ambiguous language of a divorce judgment. *See Bliss v. Bliss*, 583 A.2d 208, 210 (Me.1990). "Where the Superior Court acts as an intermediate appellate tribunal, we review the District Court's decision as though on initial appellate review." *Terison v. Terison*, 600 A.2d 1123, 1124 (Me.1992).

[¶ 6] The settlement agreement requires an annual automatic reconsideration of the child support obligation. The settlement agreement provides that Robert "shall initially" pay to Kerry child support of $46 per week, suggesting that this payment was subject to reconsideration. Moreover, the agreement stated that the total support obligation "shall be recom-puted at the end of each calendar year using the appropriate figures from the just completed calendar year," thereby requiring the parties to undertake a reconsideration each year. The agreement, therefore, requires Robert and Kerry to recalculate child support annually without court intervention.

 [¶ 7] The parties intended to use the child support guidelines in force at the time of the agreement to determine child support payments. Although the settlement agreement does not reference the child support guidelines, Robert and Kerry testified that they used the guidelines to determine the initial child support obligation of $46 per week. Kerry also testified that when the judge at the divorce hearing inquired as to how child support was calculated, Kerry's attorney explained to the judge that the parties referenced the child support guidelines and that child support payments "would follow [the child support guidelines table] in the future." Based on this evidence, the court did not err when it interpreted the settlement agreement to require the parties to compute child support based on the child support guidelines.

### II.

[¶ 8] At the time the settlement agreement was incorporated in the divorce judgment, Maine law did not require consideration of deviations from the child support guidelines. *Cf.* 19 M.R.S.A. § 303–A (Supp.1989), *repealed by* P.L.1989, ch. 834, § B–7 (effective Apr. 17, 1990) (governing child support guidelines). In April 1990, however, only two months after the Glews entered into their settlement agreement, the Legislature set forth criteria for deviations from the child support guidelines. *See* 19 M.R.S.A. § 317 (Supp.1990) (effective Apr. 17, 1990), *repealed by* P.L.1995, ch. 694, § B–1 (effective Oct. 1, 1997), *and recodified at* 19–A M.R.S.A. § 2007

(1998).[2] The Legislature concluded that deviation from the child support guidelines is necessary if a child support order based on the support guidelines "would be inequitable or unjust" due to one of the statutorily-defined criteria. *See* 19-A M.R.S.A. § 2007(1).

■ [¶ 9] Here, the court concluded that the parties intended to use the child support guidelines in force at the time of the agreement, not the child support guidelines as amended from time to time. Consequently, the court did not permit Robert to introduce evidence that the court should deviate from the child support guidelines in computing the child support arrearage. Although the judgment does not authorize deviations, either party is free to seek a modification of the divorce judgment. *See* 19-A M.R.S.A. § 2009 (1998);[3] *see also Lee v. Maier*, 1999 ME 62, ¶ 12, 728 A.2d 154, 157; *Absher v. LaCombe*, 432 A.2d 1241, 1242-43 (Me. 1981). Because the judgment did not foreclose the parties from seeking a modification, it does not violate public policy.

[¶ 10] Robert also argues that, as a matter of general public policy, this Court should reject divorce judgments that auto-

2. Title 19-A M.R.S.A. § 2007 (1998) provides in pertinent part:

**Deviation from child support guidelines**

1. **Rebutting presumption.** If the court or hearing officer finds that a child support order based on the support guidelines would be inequitable or unjust due to one or more of the considerations listed under subsection 3, that finding is sufficient to rebut the presumption established in section 2005.

. . . .

3. **Criteria for deviating from support guidelines.** Criteria that may justify deviation from the support guidelines are as follows:

A. The nonprimary residential care provider is in fact providing primary residential care from more than 30% of the time on an annual basis;

B. The number of children for whom support is being determined is greater than 6;

C. The interrelation of the total support obligation established under the support guidelines for child support, the division of property and an award of spousal support made in the same proceeding for which a parental support obligation is being determined;

D. The financial resources of each child;

E. The financial resources and needs of a party . . .;

F. The standard of living each child would have enjoyed had the marital relationship continued;

G. The physical and emotional conditions of each child;

H. The educational needs of each child;

I. Inflation with relation to the cost of living;

J. Available income and financial contributions of the domestic associate or current spouse of each party;

K. The existence of other persons who are actually financially dependent on either party . . .;

L. The tax consequences of a support award . . .;

M. The fact that the incremental cost of health insurance premiums required to be paid by a party, notwithstanding the deduction of these premiums from gross income, exceeds 15% of that party's share of the total support obligation;

N. The fact that income at a reasonable rate of return may be imputed to nonincome-producing assets with an aggregate fair market value of $10,000 or more, other than an ordinary residence or other asset from which each child derives a substantial benefit;

O. The existence of special circumstances regarding a child 12 years of age or older . . .;

P. An obligor party's substantial financial obligation regarding the costs of transportation of each child for purposes of parent and child contact. . .;

Q. A finding by the court or hearing officer that the application of the support guidelines would be unjust, inappropriate or not in the child's best interest.

3. Title 19-A M.R.S.A. § 2009 provides in pertinent part:

*Modification of existing support orders*

*1. Motion to modify support. A party, including the department, may file a motion to modify support. . . .*

*2. Retroactive. Child support orders may be modified retroactively but only from the date that notice of a petition for modification has been served upon the opposing party*

. . . .

. . . .

matically provide for future changes in child support amounts. Robert argues that provisions requiring automatic adjustments violate public policy because such orders are speculative and fail to take into consideration a wide range of factors other than the non-custodial parent's gross income. *See generally* Jay M. Zitter, Annotation, *Validity and Enforceability of Escalation Clause in Divorce Decree Relating to Alimony and Child Support,* 19 A.L.R.4th 830 §§ 2, 7 (1983 & Supp.1998).

[¶ 11] Without deciding the permissible scope of agreements requiring automatic calculations of child support, we conclude that this agreement, incorporated into the judgment, does not violate public policy. First, it promotes judicial economy and the retention of scarce personal resources by avoiding the costs of litigation for annual modifications. Second, given that the child support guidelines take into consideration the age of the child, each parent's income, and the parents' combined incomes, a determination of child support payments based on these factors does not violate public policy by focusing exclusively on the obligor's income. *See* 19 M.R.S.A. § 316 (Supp.1990) (effective Apr. 17, 1990), *repealed by* P.L.1995, ch. 694, § B–1 (effective Oct. 1, 1997), *and recodified at* 19–A M.R.S.A. § 2006 (1998) (setting forth basis for computing parental support).[4] Third, the agreement preserved each party's ability to move for a modification. *See Heinze v. Heinze,* 122 N.H. 358, 444 A.2d 559, 562 (1982) (affirming use of automatic escalation clause where obligor can seek modification of the order). Finally, Robert agreed to the recalculation procedure. *See Peterson v. Leonard,* 622 A.2d 87, 89 (Me.1993) ("[O]ne who has expressly agreed to include such a provision in the judgment 'is in a poor position to subsequently object to the court's doing what he requested the court to do.'"). Consequently, Robert has failed to raise a valid public policy objection to the enforcement of the agreement providing for automatic adjustments of child support.

### III.

[¶ 12] Robert argues that the doctrine of laches prevents the court from awarding child support arrearage dating back to the time of the divorce. We disagree.

[¶ 13] Laches is applied when "the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and where it would be inequitable to enforce the right." *Fisco v. Department of Human Servs.,* 659 A.2d 274, 275 (Me.1995) (quoting *Leathers v. Stewart,* 108 Me. 96, 101, 79 A. 16, 18 (1911)). Whether laches applies in a given circumstance is a question of law. *See id.*

[¶ 14] Assuming that laches may apply to defeat a claim for child support arrearage, Robert has failed to establish the requisite elements to bar Kerry's action. *See Department of Human Servs. v. Bell,* 1998 ME 123, ¶ 7, 711 A.2d 1292, 1295; *Fisco,* 659 A.2d at 275–76; *Trimble v. Department of Human Servs.,* 635 A.2d 937, 939 (Me.1993). *But see Jack v. Department of Human Servs.,* 556 A.2d 1093, 1095 (Me.1989) (suggesting the defense of laches is not available in actions to establish a money debt). Kerry delayed bringing a claim for child support arrearage for about seven years. This delay, however, is not unexplained or unreasonable. Kerry testified that she asked Robert over a hundred times to give her his tax returns

4. Pursuant to the child support guidelines, Robert's child support payments are determined by (1) calculating the parents' combined income; (2) determining the child support entitlement on the child support guidelines table based the parents' combined income and the age of the child; and (3) dividing this child support entitlement figure between the parties in proportion to their respective gross incomes. *See* 19–A M.R.S.A. § 2006 (1998).

as required by the settlement agreement, but that each time he refused. Only after Kerry received all of Robert's financial information could she assess whether the child support payments should be increased. Because Robert's failure to comply with the settlement agreement caused Kerry's delay in filing for child support arrearage, Robert's laches defense fails. In these circumstances, it is not equitable to enforce Kerry's rights to child support arrearage, and the court, therefore, did not err when it denied Robert's laches defense.

The entry is:

Judgment affirmed.

