2008 ME 191

**Julia A. ELLIS**

v.

**Robert G. ELLIS.**

Supreme Judicial Court of Maine.

Argued: Sept. 15, 2008.
Decided: Dec. 23, 2008.

Edward S. David, Esq. (orally) Joyce, David & Hanstein, P.A., Farmington, ME, for Julia A. Ellis.

David M. Sanders, Esq. (orally), Livermore Falls, ME, for Robert G. Ellis.

Panel: SAUFLEY, C.J., CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Julia A. Ellis appeals from an order entered in the District Court (Farmington, *Dow, J.*) modifying Robert G. Ellis's spousal support and child support obligations set out in the parties' 2004 divorce judgment, and denying Julia's motion for contempt. Julia contends, inter alia, that the court applied the wrong legal standard in modifying the spousal support award by failing to fully consider and apply language in the divorce judgment prohibiting a decrease in spousal support based on her financial circumstances, and that absent the consideration of her circumstances, the extent of the modification was unjustified. Julia also contends that the trial court erred when it modified Robert's support obligation for their two minor children because there was insufficient evidence of a substantial change in circumstances. Lastly, Julia argues that the court should have held Robert in contempt for not paying spousal support, and that it should have ordered Robert to pay attorney fees to Julia based on the disparity in their ability to pay. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Julia and Robert, both represented by counsel, agreed on the terms of their divorce, and on April 16, 2004, the court entered a divorce judgment reflecting that agreement. Julia was unemployed at the time. The divorce judgment provided that Robert was to pay Julia spousal support in the amount of $600 per week for a period of six and one-half years, or 338 payments, and $355 per week in child support. As to the spousal support award, the judgment also stated: "During the term, there shall be no increase based on changes of circumstances and no decrease *based upon the financial circumstances of [Julia]*, but said spousal support shall cease upon the death of either party or the remarriage of [Julia] or the expiration of the said term, whichever is earlier." (Emphasis added.) The judgment also provided that Julia keep the marital home, but required her to

pay Robert $20,000 at the end of ten years for his share of the equity in the home.

[¶ 3] Robert is employed as a physician's assistant. Before starting his studies to become a physician's assistant, he and Julia consolidated the debt remaining on their undergraduate student loans. As part of the divorce judgment, Robert took on the responsibility of the debt, even though Julia had incurred much of it. The total monthly payment for the undergraduate loan debt is approximately $278 per month. Robert also pays the educational loans he incurred while training to be a physician's assistant. In total, Robert pays approximately $575 per month toward student loans and owes a total of approximately $40,000.

[¶ 4] For a period of time after the divorce, Robert paid his spousal support obligation while working four different jobs. In order to maintain the multiple jobs, Robert worked sixty, seventy, and sometimes eighty hours per week. In 2003, Robert made approximately $108,000. In 2004, he earned approximately $112,000, and in 2005, he made approximately $120,000. Robert felt that working such long hours prevented him from being a good father, and so he left the Skowhegan area where he had been living and working to move closer to the children in New Vineyard.

[¶ 5] Up until June of 2006, Julia had been in school earning her nursing degree. As soon as she began working as a nurse in June of 2006, Robert stopped making spousal support payments. According to Robert, Julia had assured him that she would not continue to collect the $600 per week in spousal support once she completed nursing school. According to Julia, the agreement in the divorce judgment regarding spousal support was based in part on her support of Robert while he studied to be a physician's assistant, and was intended to allow her and the children to remain in the marital home for the full six and one-half years while she sought a career that would enable her to support herself and the children.[1]

[¶ 6] On June 29, 2006, Julia filed a motion for contempt. On August 14, 2006, Robert moved to modify spousal support and child support. In November of 2006, the parties agreed to have their pending motions considered together, and Robert agreed to pay $300 per week in spousal support. Robert paid the $300 per week until mid-February of 2007, at which time Julia filed another motion for contempt. The court heard the motions in April of 2007. As of that time, Robert owed Julia $21,600 in back spousal support.

[¶ 7] At the time of the hearing, Robert was forty-three years old. He worked at the Franklin Memorial Hospital in Farmington as an orthopedic physician's assistant earning $83,000 per year. The hospital paid approximately $240 per month toward Robert's student loans. Robert also worked part-time, when able to, at the Redington–Fairview emergency room in Skowhegan.

[¶ 8] At that time, Julia was forty-one years old. She worked nights as a nurse an average of thirty-three hours per week. Her stated goal is to go back to school to obtain an advanced degree to allow her to work as a nurse practitioner or a nurse anesthetist.

1. The divorce judgment provided that Robert be allowed to claim the children as dependents if he paid Julia the difference between what her tax liability was without claiming the children, and what it would be if she claimed the children. In 2006, Robert did not pay that amount to Julia even though he claimed the children on his tax return. At the April 13, 2007 hearing, Robert agreed to pay the amount to Julia.

[¶ 9] Robert testified that he can pay child support, but is unable to pay any spousal support. He testified about his attempts to lower his expenses, such as keeping the heat turned down, canceling his land-line phone, and using furniture provided by his parents. He lives in a house his parents own, and he is sometimes unable to pay the monthly rent of $550. He testified that he has borrowed money from his parents, and incurred credit card debt to pay his monthly expenses. He has accumulated approximately $33,000 in credit card debt over the last three years. He also assumed $15,000 of marital credit card debt in the divorce judgment. His total monthly credit card payment is $1150.

[¶ 10] After the hearing, the court addressed Robert's spousal support obligation and modified it, decreasing it from $600 to $150 per week. In doing so, the court explicitly disavowed any reliance on the increase in Julia's income, and stated that it considered only the decrease in Robert's income. The court also granted Robert's motion to modify his child support obligation, calculating the child support based on the parties' representations of their incomes. Julia filed this appeal.

## II. DISCUSSION

### A. Legal Standard

■ [¶ 11] "The party seeking modification of a spousal support award granted in a divorce judgment bears the burden of establishing a substantial change in circumstances justifying a modification." *Largay v. Largay*, 2000 ME 108, ¶ 11, 752 A.2d 194, 197. Once the party has met that burden, the court may order a modifi-

cation if "justice requires." 19–A M.R.S. § 951–A(4) (2007).[2]

■ [¶ 12] If the spousal support provision includes an anti-modification clause, a different standard applies.

> When the divorce decree incorporates the parties' agreement that there be no modification of the award of alimony … a payor spouse seeking to reduce his or her obligation must justify the modification on the basis of changed circumstances beyond a mere showing that there has been a substantial change in the parties' respective economic circumstance.

*Day v. Day*, 1998 ME 194, ¶ 6, 717 A.2d 914, 916. "[A]n anti-modification provision should be considered by the divorce court as an extraordinary circumstance, imposing a greater evidentiary burden on the payor spouse who seeks to modify a decree than would be encountered where no such agreement exists...." *Hale v. Hale*, 604 A.2d 38, 41 (Me.1992). Only after the party seeking to modify the support obligation has met this heightened standard of proof can the court adjust the spousal support as justice requires.

■ [¶ 13] Julia contends that the court failed to comply with the anti-modification provision in this divorce judgment, and impermissibly reduced Robert's spousal support without requiring Robert to meet the heightened standard of proof that Julia argues should apply. Robert's spousal support obligation in this divorce judgment, however, is not subject to a blanket anti-modification clause. Rather, it provides that Robert's spousal support obligation is not to be decreased "based on the financial circumstances of [Julia]."

**2.** Title 19–A M.R.S. § 951–A(4) (2007) provides that "[a]n award of spousal support is subject to modification when it appears that justice requires unless and to the extent the

order awarding or modifying spousal support expressly states that the award, in whole or in part, is not subject to future modification."

[¶ 14] The trial court was not required to apply the heightened standard of proof applicable to changes to spousal support obligations subject to an anti-modification provision in this case because the court explicitly stated that the change in Julia's financial circumstances was *not* the basis for a downward modification of Robert's spousal support obligation. Because the court did not consider Julia's income, Robert's burden was to show only a substantial change in circumstances, and he was not required to meet the heightened standard of proof that would apply to a clause prohibiting *any* modification of spousal support. *Largay*, 2000 ME 108, ¶ 11, 752 A.2d at 197.

[¶ 15] We review the modification of spousal support for an abuse of discretion. *Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074, 1077. We review the trial court's factual finding regarding whether a substantial change in circumstances exists for clear error. *See id.*; *Jabar v. Jabar*, 2006 ME 74, ¶ 13, 899 A.2d 796, 799.

[¶ 16] The court did not err in concluding that Robert established a substantial change in his circumstances. His income had substantially decreased, his debt had substantially increased, and his financial position had become increasingly difficult. Because there was evidence that there was a substantial change in Robert's circumstances, the court did not abuse its discretion in determining that a modification to spousal support was warranted.

[¶ 17] Julia, however, argues that even if Robert has demonstrated a change in his circumstances sufficient to justify *some* modification of his spousal support obligation, the *extent* of the modification of spousal support ordered cannot be justified on that basis alone. Robert's income dropped from $108,000 to $83,000, a de-

crease of approximately twenty-five percent since the time of the original spousal support award, but the court reduced the spousal support award by seventy-five percent. Julia contends that the extent of the decrease in spousal support cannot be justified solely on the decrease in Robert's income.

[¶ 18] In arguing that the court did not give sufficient consideration to the clause limiting modification, Julia asserts that the clause had a special purpose unique to the family's circumstances. She contends that she contributed to Robert's support while he completed his studies to be a physician's assistant, and that the parties intended the language limiting modification of spousal support to allow her to further her education by earning an advanced degree so that her earnings would be at the same level as Robert's, and to allow her to remain in the marital home with the children during the entire six and one-half year time period. She also contends that the only way she can comply with her obligation to pay Robert $20,000 for his equity in the marital home is if his spousal support payments continue for the entire period as reflected in the agreement. According to Julia, the letter and spirit of the clause limiting modification prohibits the court from considering her earnings in *any way* in its determination of any reduced amount of Robert's spousal support obligation based on Robert's earnings, and the seventy-five percent reduction in Robert's support obligation is excessive and not supported by the evidence.

[¶ 19] Because Julia did not file a motion for further findings of fact and conclusions of law, however, we must assume that the trial court made all findings necessary to support its decision to reduce Robert's spousal obligation to the extent that it did. *Coppola v. Coppola*, 2007 ME 147, ¶ 25, 938 A.2d 786, 794. There was

evidence that Robert's economic situation had significantly deteriorated, that he was faced with substantial and mounting debt, and that he simply could not make the spousal support payments of $600 per week in the divorce judgment. Moreover, we cannot say that such a reduction was contrary to the spousal support language of the divorce judgment, or was inconsistent with the intent of the parties. Therefore, the trial court neither clearly erred nor acted beyond its discretion in reducing Robert's spousal support obligation.[3]

## B. Child Support

[¶ 20] We have stated that:

We review a trial court's award of child support to determine whether the court exceeded its discretion in fashioning the award. The court's factual findings in calculating child support are reviewed for clear error, and we will not disturb such findings if there is any competent evidence in the record to support them.

*Foley v. Ziegler*, 2007 ME ¶ 127, 8, 931 A.2d 498, 500 (internal citations omitted).

[¶ 21] Title 19–A M.R.S. § 2009(3) (2007), provides:

If it has been 3 years or longer since the [child support] order was issued or modified, the court or hearing officer shall review the order without requiring proof or showing of a change of circumstances and shall modify the order if the amount of the child support award under the order differs from the amount that would be awarded under the guidelines.

[¶ 22] Julia contends that the court erred in modifying the child support award because the court should not have considered her income in making the award, and because Robert's change in income is a "self-serving projection" and does not constitute a substantial change in circumstances.

[¶ 23] We are unpersuaded by Julia's contentions for three reasons. First, the court did not need to find that a substantial change in circumstances existed in order to modify the child support award because more than three years has passed since the court made the original determination of child support. 19–A M.R.S. § 2009(3). Second, the fact that the divorce judgment states that Julia's financial circumstances cannot justify a change in *spousal support* does not prohibit the court from considering her increased income in a request to modify *child support*. Finally, the record supports the District Court's findings regarding the parties' gross income. Therefore, the court did not err or act beyond its discretion in modifying the child support obligation or in calculating the amount of child support to be paid.

## C. Contempt

[¶ 24] With regard to civil contempt, we have stated:

Absent any clear error in the underlying factual determinations, we review the denial of a motion for civil contempt for abuse of discretion. For a court to find contempt, the alleged contemnor must be presently able to comply with the court's order. When it is impossible for a party to comply, the party is not in contempt. It is presumed that an alleged contemnor is presently able to comply when the order itself implies that he was able to comply at the time the order was issued; therefore, the moving party makes a prima facie case

---

**3.** Julia's contention that the court failed to comply with 19–A M.R.S. § 951–A(1)(D) is without merit. The court listed the factors it relied upon in modifying the spousal support award—specifically, the change in the husband's ability to pay.

of contempt when the moving party establishes that the alleged contemnor has not complied with a valid court order. Once the failure to comply has been established, the alleged contemnor has the burden of production, of going forward with evidence of his inability to comply. The burden of persuasion, however, remains with the moving party.

*Ames v. Ames,* 2003 ME 60, ¶ 22, 822 A.2d 1201, 1207–08 (internal citations and quotation marks omitted).

 [¶ 25] Julia established a prima facie case of contempt by showing that Robert did not comply with his spousal support obligation in the divorce judgment. Robert, however, presented evidence of his inability to comply because of extreme financial strain. Ultimately, the court found that Robert's ability to pay diminished over time, and that at the point that he ceased paying spousal support, he lacked the ability to do otherwise—a finding that is supported by competent evidence. Therefore, the denial of the motion for contempt was not an abuse of the court's discretion.

D. Attorney Fees

[¶ 26] "A divorce court may order one party to pay the other's attorney fees based on the parties' relative financial ability to pay the costs of litigation as long as the award is ultimately fair under the totality of the circumstances." *Carter v. Carter,* 2006 ME 68, ¶ 22, 900 A.2d 200, 205 (quotation marks omitted). We review the divorce court's order regarding attorney fees for an abuse of discretion. *Id.* "A party's conduct may be taken into account in awarding attorney fees especially when costs of litigation, or other expenses related to the divorce, have been needlessly increased." *Urquhart v. Urquhart,* 2004 ME 103, ¶ 6, 854 A.2d 193, 195.

[¶ 27] Given Robert's testimony regarding his financial situation, the trial court did not abuse its discretion when it ordered both parties to pay their own attorney fees. Both parties work and earn their own incomes. Even though Julia is pursuing payment of court awarded spousal support, there is nothing to suggest that Robert "needlessly" increased the cost of litigation, particularly when there was merit in his motion for modification of spousal support and child support.

The entry is:

Judgment affirmed.