2009 ME 80

## Todd S. HOLBROOK

v.

## Lisa J. HOLBROOK.

Supreme Judicial Court of Maine.

Submitted on Briefs: June 4, 2009.

Decided: July 30, 2009.

---

Theodore H. Irwin, Esq., Irwin, Tardy & Morris, Portland, ME, attorney for Todd S. Holbrook.

Clarke C. Hambley, Esq., Givertz, Hambley, Scheffee & Lavoie, P.A., Portland, ME, attorney for Lisa J. Holbrook.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

SILVER, J.

[¶ 1] Todd S. Holbrook appeals from the judgment of the District Court (Portland, *MG Kennedy, J.*) adopting the order and additional findings of fact of the family law magistrate (*Oram, M.*). The court's judgment modified the parties' divorce judgment, which had previously been amended by a stipulation between Todd and Lisa J. Holbrook, to increase Todd's child support obligation. Todd argues that: (1) Lisa should not have been permitted to pursue a modification of the amended divorce judgment as a substitute for the normal appellate procedure; (2) the court erred in refusing to enforce the 2006 amended divorce judgment agreed to by the parties and adopted by the court; (3) the court erred in substantially increasing his child support obligation without a substantial change in circumstances or sufficient evidence that additional child sup-

port was needed; and (4) the court abused its discretion by awarding the additional child support retroactively. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Todd and Lisa Holbrook were married in 1990 and divorced by final judgment in 2003. Todd is an attorney, with a current salary of approximately $450,000 per year. Lisa is a communications and marketing manager for a non-profit organization, with a salary of approximately $50,000 per year. Todd and Lisa have two children together. The older child, age sixteen, is in high school, and the younger one, age eleven, is in middle school. Initially, Todd and Lisa shared primary physical residence of the children. The children spent five or six days out of every two weeks with their father, and they spent the rest of the time with their mother in Falmouth. However, Todd began a new job in September 2007 that required him to move to Boston. Due to Todd's move, the children now spend every other weekend with him, as well as some holidays and vacations, and they otherwise reside with Lisa.

[¶ 3] In May 2006, Todd and Lisa agreed to an amendment to the divorce judgment, which was entered in the District Court (Portland, *Crowley, J.*). Among other things, the amendment altered the child support arrangement. The relevant portion of the amendment states: "The parties agree to recalculate child support according to the Maine Child Support Guidelines then in effect (without deviation above chart levels) when ... [there is] a substantial change in the parties' circumstances." At the time, Todd was still living in Maine, and his income was $211,750 a year. The combined income of both parties was $250,650, an amount that was $10,650 above the highest income bracket on the Maine Child Support Guidelines, which, at the time, were capped at $240,000. *Maine Court Rules* 316 (State ed. 2006).

[¶ 4] It appears that Todd and Lisa had conflicting interpretations of the amended language.[1] Notwithstanding their individual interpretations, Todd continued to pay Lisa child support based on the income level of $240,000, found at the top of the chart then in effect. When Todd moved to Massachusetts to begin his new job in Boston, his salary increased to $450,000. Therefore, when new guidelines were proposed, increasing the highest total income on the chart to $400,000, Todd voluntarily recalculated his support according to the numbers found at that income level (even though the new chart had not yet been adopted). Consequently, Todd's payments increased from approximately $2462 per month to $2625 per month.

[¶ 5] Lisa did not appeal the amended divorce judgment of May 2006. In October 2007, however, Lisa filed a motion to modify the amended divorce judgment due to a substantial change in circumstances, which included: (1) an increase in Todd's

1. Because "deviation," as indirectly defined by 19–A M.R.S. §§ 2005 and 2007(1) (2008), and clarified by 19–A M.R.S. § 2006(5)(B) (2008), is not possible when combined salaries rise above chart levels, the magistrate found the amended language to be ambiguous, and admitted extrinsic evidence to determine its meaning. We defer to the magistrate's ultimate interpretation of the phrase "without deviation above chart levels," in which the court adopted Todd's interpretation. Todd interpreted the language to mean that, assuming his and Lisa's salaries do not go down and their combined income remains above the highest chart level, they would use the top line of the chart then in effect to determine the amount of child support. Lisa's interpretation cannot be determined from the record, although she appeared to disagree with Todd's interpretation.

income from $211,750 to $450,000 plus bonuses, and (2) Todd's move to Massachusetts, which meant less time with the children (thereby increasing Lisa's day-to-day costs).

[¶ 6] Following a June 2008 hearing on Lisa's motion, the magistrate found that the child support language contained in the May 2006 amended judgment—specifically the "without deviation above chart levels" language—violated public policy because it limited the court's ability to determine the appropriate level of future support. The magistrate found, in part, that: (1) Todd's increased salary brought the parties' total income to $521,435, more than twice the highest chart level; (2) the children could benefit from engaging in extracurricular activities; and (3) Lisa's costs had increased because the children were spending less time with Todd. As a result, the magistrate ordered Todd to pay $3575 per month, until the older child is no longer entitled to support, at which time the payments would be reduced to $2166 per month. The magistrate arrived at the $3575 figure by calculating the parties' proportionate shares using the top line of the chart then in effect, which was $240,000, and adding an additional amount that it deemed appropriate, which amounted to an extra $1257 per month.[2] The child support was awarded retroactively to October 26, 2007, the date Todd accepted service for Lisa's motion to modify.

[¶ 7] Todd filed a request for additional findings of fact pursuant to M.R. Civ. P. 52(b), and the magistrate granted his request in August 2008. The magistrate's amended divorce judgment and additional findings of fact were adopted by the District Court on October 23, 2008. Todd filed this appeal.

## II. DISCUSSION

[¶ 8] We review the "trial court's award of child support for an abuse of discretion and its factual findings for clear error." *Nadeau v. Nadeau*, 2008 ME 147, ¶ 52, 957 A.2d 108, 122. "[W]e will not disturb such findings if there is any competent evidence in the record to support them." *Ellis v. Ellis*, 2008 ME 191, ¶ 20, 962 A.2d 328, 334 (quotation marks omitted). When the District Court adopts the order of a magistrate, we review the magistrate's order directly. *Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 14, 964 A.2d 630, 634.

### A. Procedural Method for Altering a Divorce Judgment

[¶ 9] Todd argues that Lisa should not be able to pursue a modification of the amended divorce judgment as a substitute for the normal appellate procedure. He contends that, because Lisa testified that she had concerns when she first signed the stipulated amendment, she should have appealed the amendment then. We have, in fact, expressed the view that rules permitting modification of a judgment should not be utilized "as an alternative method of appellate review, nor as a procedural means by which legal errors readily correctable on appeal may be challenged in a second round of litigation." *Reville v. Reville*, 370 A.2d 249, 254 (Me. 1977) (concerning a M.R. Civ. P. 60(b)

---

2. Although Todd had voluntarily recalculated his child support payments based on the proposed changes to the Maine Child Support Guidelines, which included a new chart with incomes up to $400,000, the court, in its calculations, used the earlier version of the chart (that was in effect at that time), which was capped at $240,000. The newer chart has since been adopted in Maine, and was made effective December 1, 2008. 17 C.M.R. 10 144 351–4 (2009). However, because the District Court proceeding took place prior to the effective date of the new chart, the issues in this case will be analyzed under the old chart, where $240,000 was the highest combined income listed.

motion). Our analysis concerning a Rule 60(b) motion does not, however, necessarily mirror one that would involve a motion to modify child support. Nonetheless, we need not make such a determination because, even if our analysis with respect to a Rule 60(b) motion would be applicable to a motion to modify child support, Todd's argument carries little weight due to the changes in circumstances that arose well after the entry of the amended judgment.

[¶ 10] Although Lisa may have initially expressed concern about how Todd might interpret the stipulated amendment in the future, she was not required to appeal based upon mere speculation regarding Todd's possible future actions. When the parties stipulated to the amendment, Todd's income was $211,750, bringing the parties' combined income to $250,650, just $10,650 more than the top line of the chart. Certainly, Lisa's concerns would have been more than speculative if she had known that Todd would move to Massachusetts the following year and more than double his income (causing the parties' total income to be more than $280,000 above the top line of the chart). However, Todd points to nothing in the record to demonstrate that Lisa (or even Todd) knew of such plans in May 2006. Lisa also could not have known in May 2006 that she would be caring for the children twelve out of fourteen days, as opposed to nine out of fourteen days, a change that resulted from Todd's move. Lisa was therefore justified in moving to modify the amended divorce judgment, pursuant to 19–A M.R.S. § 2009(1), (3) (2008), due to a substantial change in circumstances.

## B. The Court's Authority Pursuant to 19–A M.R.S. § 2009(3)

[¶ 11] Todd argues that 19–A M.R.S. § 2008 (2008) permits parties to stipulate to child support without court interference "if the amount stipulated is in substantial compliance with the presump-

tive application of the [Maine child support] guidelines and, if a deviation is proposed, ... it is justified and appropriate under [19–A M.R.S. § 2007 (2008) ]." 19–A M.R.S. § 2008. However, because we ultimately conclude that the amended language constrains a court's authority pursuant to 19–A M.R.S. § 2009(3), and thus violates public policy, we need not determine whether the stipulated amendment complies with section 2008.

[¶ 12] Notwithstanding the possibility that the stipulated amendment complies with section 2008, the magistrate determined that the amendment violates public policy because it ties the court's hands and prevents it from modifying the judgment in the future to account for a substantial change in circumstances. *See* 19–A M.R.S. § 2009(3). We agree. Even if the stipulated amendment would be permissible pursuant to section 2008, it prevents the court from modifying the child support obligation as it is authorized to do pursuant to section 2009(3).

[¶ 13] The trial court is entitled to "substantial deference" in the determination of child support. *Dargie v. Dargie,* 2001 ME 127, ¶ 23, 778 A.2d 353, 358. When parties' combined income exceeds $240,000, there is a presumed minimum set forth by 19–A M.R.S. § 2006(5)(B) (2008), but a court's determination of child support beyond the highest level on the chart is entirely within its discretion. *White v. Allen,* 667 A.2d 112, 115 (Me.1995). The divorce judgment and incorporated settlement agreement, as well as section 2009(3), permit either party to seek a modification of the child support provisions upon a showing of a substantial change in circumstances. However, although Lisa is permitted to seek modification *procedurally,* the stipulated amendment, as Todd interprets it, *substantively* bars the court from modifying the child support obligation.

Specifically, Todd contends that the only way for his monthly payments to rise is if the top line of the chart rises. Under Todd's interpretation, his annual salary could increase to one million dollars, and, as long as the chart does not change, no court could authorize a payment higher than that found at the $240,000 level.[3] Pursuant to that interpretation, the language in the amended divorce judgment bars any court from using its discretion in the future to determine a child support payment higher than that imposed by the highest income level on the chart.

[¶ 14] In *Glew v. Glew*, 1999 ME 114, ¶ 11 & n. 4, 734 A.2d 676, 681, we held that a particular child support order providing for automatic future changes in child support did not violate public policy. We based this holding on four grounds: (1) the order promoted "judicial economy and the retention of scarce personal resources by avoiding the costs of litigation for annual modifications"; (2) it fairly considered both parents' income; (3) it "preserved each party's ability to move for a modification"; and (4) the parties had agreed to the recalculation procedure. *Id.*

[¶ 15] Considering the grounds set forth in *Glew*, the magistrate found that, although the Holbrooks were both in agreement, the stipulated amendment was otherwise "in stark contrast to the agreement adopted by the trial court in *Glew*." We agree that two important distinctions exist between the Holbrooks' case and *Glew*. First, the parents' incomes in this case were not fairly considered by the amended language, as the parties were being held to a combined income of $240,000 when Todd's income alone now comes close to twice that amount. Second,

although Lisa has the option of seeking modification of the order at any time, the court's hands are tied because—according to the language in the stipulated amendment—it can never increase child support payments beyond those provided at the top of the chart.

[¶ 16] The stipulated amendment therefore conflicts with the established principle that the determination of child support in cases where the parties' combined income exceeds the top of the chart is well within the discretion of the District Court. *See White*, 667 A.2d at 115; 19–A M.R.S. § 2006(5)(B). The court did not err in distinguishing the present case from *Glew* and concluding that it is a violation of public policy to limit the court's options with respect to any future requests for modification.

C. Substantial Change in Circumstance and Evidence of Need

[¶ 17] Todd argues that, even if the stipulated amendment is unenforceable, the District Court erred in awarding an increase in child support because there was no evidence of need.

[¶ 18] Todd cites almost exclusively to case law of other states to support his argument that an increase in his salary should not constitute a "substantial change in circumstances" that would permit modification of his child support obligation. However, Maine defines "substantial change in circumstances" in part by statute, stating that "[i]f a child support order varies more than 15% from a parental support obligation determined under section 2006, the court ... shall consider the variation a substantial change of circum-

---

**3.** Even if we were to consider the newly-adopted version of the child support guidelines, in which the chart is capped at $400,000, 17 C.M.R. 10 144 351–33 (2009), the same analysis applies. For example, under the new chart, Todd and Lisa's combined income currently exceeds the top line by over $100,000, and Todd's income is expected only to rise.

stances." 19–A M.R.S. § 2009(3). A section 2006 determination of child support is based on the Maine child support guidelines. However, as discussed above, when the combined income of both parents exceeds the top of the chart, such a determination is within the court's discretion. 19–A M.R.S. § 2006(5)(B); *White*, 667 A.2d at 115. Therefore, no court would ever be able to determine a fifteen percent variation from a child support order currently in effect without first determining, at its discretion, what the parental support obligation *should* be. Because the magistrate came to the proper conclusion that a more-than-fifteen percent increase was justified, section 2009(3) was satisfied.

[¶ 19] Todd contends that, even if Lisa demonstrated a substantial change in circumstances, she did not provide evidence of need sufficient to justify the $3575 monthly payment ordered by the court. We review a court's determination of child support for an abuse of discretion. *Ellis*, 2008 ME 191, ¶ 20, 962 A.2d at 334; *White*, 667 A.2d at 115.

[¶ 20] The court increased Todd's monthly payment to $950 more than what he was voluntarily paying Lisa. The court's decision was based on its findings, supported by competent evidence in the record, that Lisa's "responsibility for the day to day care and transportation of the children ha[d] increased significantly since the entry of the 2006 Amended Judgment," with the children spending less time with their father each month now that he lives in Massachusetts. The court's decision was also based on evidence, provided by Lisa, of the children's desires to engage in extracurricular activities and the older child's need for a car, which will allow the child to obtain a job and drive around the younger child when Lisa has to work.

[¶ 21] Todd contends that Lisa's failure to provide the court with exact costs for all of the children's activities constitutes a lack of evidence. However, we recognized in *White*, 667 A.2d at 114, that "future support inevitably involves estimation and projection," and Lisa provided evidence that went far beyond mere speculation.

[¶ 22] Lisa's testimony concerning the children was more than enough to provide an evidentiary basis for the court's determination of child support. *See Ellis*, 2008 ME 191, ¶ 20, 962 A.2d at 334. There is competent evidence in the record to support the court's findings, *see id.*, and the court did not exceed its discretion when it ordered Todd to pay $3575 per month in child support based on those findings.

**D. Retroactive Award of Child Support**

[¶ 23] Todd contends that the court erred in awarding child support retroactively to October 26, 2007, which was the date on which Todd was served with the motion to modify. Pursuant to 19–A M.R.S. § 2009(2) (2008), child support orders may be modified retroactively to the date that the motion to modify was served upon the opposing party. "Retroactivity of a [child] support award is within the broad discretion of the court." *Nicholson v. Nicholson*, 2000 ME 12, ¶ 9, 747 A.2d 588, 591. As with future support, this court will only overturn a retroactive award of child support if it results in an abuse of discretion.

[¶ 24] Todd argues that Lisa had held off spending additional money on the children during the pendency of the motion, and that, therefore, she is not entitled to retroactive child support. Indeed, a significant amount of the evidence Lisa provided at the hearing involved future plans for the children. However, due to Todd's move in September 2007, the children live with Lisa for what amounts to one additional week per month. She is also now the sole parent responsible for transporting the children to all of their lessons and extra-

curricular activities. These extra responsibilities have inevitably increased her day-to-day costs. Therefore, the court made no factual error when it determined that Lisa's costs had increased when Todd moved, and it acted within its discretion when it increased Todd's child support payments retroactively to October 2007. *See Nadeau,* 2008 ME 147, ¶ 52, 957 A.2d at 122.

[¶ 25] Todd makes two additional arguments regarding the retroactive award of support—that the child support is disguised alimony and that the court failed to consider his increased living expenses due to his move—but, after carefully reviewing the record, we are not persuaded by either argument.

The entry is:

Judgment affirmed.