STATE OF MAINE                                  SUPERIOR COURT
CUMBERLAND, ss.                                 CIVIL ACTION
                                                Docket No. CV-10-443

FAYE SANDLER,

                    Plaintiff,

v.                                              ORDER

STATE OF MAINE
Cumberland, ss, Clerk's Office
DALE LALONE,

                    Defendant.                  JUN 30 2011

# RECEIVED

Before the court are a motion by plaintiff Faye Sandler (Faye) for partial summary judgment and a cross-motion by defendant Dale Lalone (Dale) for partial summary judgment. Also before the court is Faye's motion in limine to exclude parol evidence.[1]

Faye and Dale were divorced in February 1997. They have one child, Abby (born July 17, 1992), who was four years old at the time of the divorce and is now 18. In her complaint Faye alleges that Dale has breached a contractual obligation independent of the divorce judgment to pay for Abby's college education. Dale raises a number of defenses and asserts five counterclaims. The first three of his counterclaims restate his affirmative defenses as requests for declaratory relief, and his fourth and fifth counterclaims seek damages for breach of contract and unjust enrichment.

The dispute in this case centers on the interpretation, enforcement, and validity of an agreement signed by Faye and Dale in August 1998, approximately 18 months

---

[1] The court agrees with Dale that this latter motion is premature but has considered the arguments made by the parties in evaluating the extent to which it can consider parol evidence in connection with the cross motions for summary judgment.

after their divorce judgment.[2] That agreement, which addresses child support and several other issues, provides in section 3 that "Dale shall pay for Abby's undergraduate college education."

Certain of the facts and legal arguments have previously been outlined in the court's December 7, 2010 order granting plaintiff's motion for an attachment.

1. Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

Under Rule 56(h)(4), facts contained in a supporting or opposing statement of material facts (SMF), "if supported by record citations," shall be deemed admitted for

---

[2] Copies of that agreement are annexed as Exhibit A to Faye's complaint and as Exhibit A to Dale's affidavit dated September 23, 2010. See Faye's January 20, 2011 SMF ¶ 4 (admitted); Dale's February 8, 2011 SMF ¶ 1 (admitted). The Agreement is entitled "child support agreement" and states that it was entered into in July 1998. Both Faye and Dale signed the agreement and acknowledged their signatures before notaries in August 1998.

2

purposes of summary judgment unless properly controverted.[3] For factual assertions to be properly supported or controverted, there must be record citations to affidavits on personal knowledge or to other record evidence that would be admissible at trial, including but not limited to depositions and interrogatories. M.R.Civ.P. 56(e).

There is an issue in this case as to whether certain of the parties' factual assertions have been properly supported and whether certain of their assertions have been properly controverted.

## 2. Disputed and Undisputed Facts

Specifically, Dale objects to many of the assertions in Faye's supporting and opposing statements of material fact on the ground that they are not supported by proper record citations. Although some of his objections are unfounded,[4] many have merit.

Specifically, the court concludes that Dale has properly objected to paragraphs 8, 9, and 11 of Faye's January 19, 2011 SMF because the assertions in those paragraphs are conclusions and characterizations of law. It also concludes that Dale is correct that Faye has not properly controverted paragraphs 7-9, 11, 14, 17-44, 62-63, and 66 in Dale's

---

[3] Just because facts are not controverted for purposes of summary judgment does not mean those facts are thereafter established for all purposes unless the procedures set forth in Rule 56(d) have been followed. This allows parties opposing summary judgment to controvert only those facts that are pertinent to the summary judgment motion; they are not required to controvert every factual assertion made by their opponent or run the risk of being precluded from controverting those facts at trial.

[4] By way of example, Dale objects to paragraph 6 of Faye's original SMF dated January 19, 2011 contending that that paragraph is not based on personal knowledge. Faye's January 20, 2011 affidavit expressly states that it is based on personal knowledge (¶ 2) and the court has no reason to doubt that Faye in fact has personal knowledge that Abby graduated from high school in June 2010 and began attending the University of Rochester in the fall of 2010. Id. ¶ 10. The court's job in evaluating a motion for summary judgment is not assisted when parties object to facts that are properly supported and not actually in dispute.

3

February 8, 2011 SMF and the facts contained therein are admitted for purposes of summary judgment.

That leaves four other categories of factual assertions that Dale contends are undisputed. First, the court agrees that Faye has not properly controverted paragraphs 46-58 and 72 of Dale's February 8, 2011 SMF. However, it concludes, as set forth below, that Dale's assertions that Faye breached contact and visitation provisions of the February 1997 divorce judgment do not constitute a defense to Faye's claims based a separate agreement that expressly states that it shall "be enforced as a binding contract between the parties independent of their divorce case." Agreement § 12.

Second, Dale argues that certain assertions should be deemed admitted because counsel for Faye originally objected to those assertions as irrelevant when they were propounded in a request for admissions. The problem with this argument is that Faye's objections were the subject of a discovery conference on February 28, the result of which was that the requests in question were denied. See order dated February 28, 2011. Paragraphs 15 and 16 of Dale's February 8, 2011 SMF are therefore unsupported.

Third, several of the assertions in Dale's February 8, 2011 SMF are not supported by their record citations or are supported by record citations for which Dale has not offered any personal knowledge. [5] In addition, one paragraph of Dale's SMF (¶ 73) is not supported by any record citation.

Finally, to the extent that assertions in Dale's February 8, 2011 SMF constitute conclusions of law and to the extent that the quote from or purport to interpret the

---

[5] E.g., ¶¶ 10, 13, 64-65, 68-69. In connection with ¶ 64, for instance, Faye's statement that at the time of the 1998 Agreement she and Dale chose not to modify their Divorce Judgment but instead to enter into a separate agreement (Sandler 1/20/11 Aff. ¶ 6) is not the same as an admission that she intended to modify court-ordered child support provisions without ever seeking court approval. In fact, the 1998 Agreement (§ 10) contemplates court approval of a separate child support order – although no such approval was ever obtained.

4

August 1998 Agreement, see, e.g., February 8, 2011 SMF ¶¶ 45, 61, 67, 71, 74, the court is not bound by those assertions but must reach its own conclusions. The interpretation of a contract is an issue of law. Moreover, the court concludes that the Agreement is a partially integrated contract, and the parol evidence rule therefore precludes Dale from offering evidence that contradicts or varies the express terms of the Agreement. E.g., February 8, 2011 SMF ¶¶ 67, 70, 75. See Brown Development Corp. v. Hemond, 2008 ME 146 ¶ 14, 956 A.2d 104, 108.

The core facts that the court finds to be undisputed for purposes of summary judgment are that both parties duly executed the August 1998 Agreement, that both parties were represented by counsel in the negotiation, drafting, and execution of that Agreement,[6] that the Agreement specified that Dale would pay child support of $280.00 per week with certain provisions purporting to prevent any modifications of that child support amount, and that the Agreement also provided, as noted above, that Dale would pay for Abby's college education. The latter obligation is not one that a court could impose but is permissible as part of a contractual agreement between divorcing spouses. See Hawkins v. Gilbo, 663 A.2d 9 (Me. 1995).

Other significant provisions of the August 1998 Agreement are the following:

- As previously stated, the Agreement provides that it shall be enforced "as a binding contract between the parties independent of their divorce case" (§ 12). It also provides that the obligations set forth in the Agreement "shall be enforced only in an action separate and distinct from their divorce action." Agreement § 10.

- The Agreement states that the $280 child support obligation "shall not be increased or decreased by court order or otherwise" except as provided in sections 5 and 6. Those sections provide for modifications if Dale's taxable income drops below $70,000 or Dale becomes the primary custodial parent. Agreement §§ 1, 5-6.

---

[6] See Plaintiff's January 19, 2011 SMF ¶ 4. Dale responded to that paragraph with a qualified admission but the qualification relates only to the fact that he never saw any version of Exhibit A to that agreement.

• The Agreement provides that both parties agree not to initiate any court action to increase or decrease child support except as set forth in sections 5 and 6. Agreement § 7. It further provides that if Faye initiates court action to modify child support, Dale's obligation to pay Abby's college expenses will be reduced according to a specified formula, Faye will have to repay certain amounts to Dale, and Faye will be responsible for Dale's attorneys fees. Id. § 7(a). If Dale initiates court action to modify child support, Dale's obligation to pay for Abby's college expenses will be immediately accelerated pursuant to a specified formula, Faye will hold those amounts as trustee for the initial college payments due, and Dale will be responsible for Faye's attorneys fees. Id.

• Section 7(a) of the Agreement also contains a provision that if either party initiates court action to modify child support, "this Agreement shall not be entered into evidence" except as to the obligation of the party initiating court action to pay the other party's fees.

The Agreement also provides (§ 10) that the parties' divorce judgment and related orders will not be modified by the Agreement "except to the extent of a stipulated modification incorporating an Amended Child Support Order of the form attached hereto as Exhibit A." Notwithstanding the "attached hereto" language, it appears that no Exhibit A was in fact attached when Dale and Faye signed the Agreement. In his affidavit, which is unrebutted for purposes of summary judgment, Dale states that he never saw any draft or final version of Exhibit A; Faye also does not recall seeing it. Defendant's February 8, 2011 SMF ¶¶ 10, 11.

The original signed Agreement was forwarded to the court with a cover letter by counsel for Faye which stated that it was enclosing the Agreement "for filing with the court." That letter indicates that it was copied to Dale's counsel without the enclosure. No Exhibit A was attached to the Agreement when it was submitted to the court. Although the Agreement was duly placed in the court file, the court never approved the Agreement nor did it enter any child support order after the original February 7, 1997 order accompanying the Divorce Judgment. That order had required Dale to pay $196.00 in weekly child support.

6

It is undisputed that Dale paid $ 280.00 per week in child support from the date of the August 1998 Agreement until Abby turned 18 and that neither Faye nor Dale ever sought any judicial modification of child support.

The summary judgment record leaves open the following issues among others: (1) which party was responsible for inserting the anti-modification provisions; (2) whether Exhibit A was inadvertently omitted or whether one or both counsel were aware that it had been omitted; (3) whether the failure to have the court approve the $ 280.00 per week child support obligation was inadvertent or whether one or both counsel chose not to seek such approval; and (4) whether Faye, her counsel, or Dale's counsel were aware that the anti-modification provisions were or that Dale's $ 280.00 child support obligation was unenforceable because it had never been approved by the court.[7]

### 3. Law of the Case

At the outset, the court does not agree with Faye's argument that its December 7, 2010 attachment order constitutes the law of the case. Trial court rulings (as opposed to appellate court rulings) are always subject to reconsideration, and this is particularly true of preliminary rulings. See C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4478.1 at 692-93, 698 (2002). The December 7 order was based on the record before the court at that time, and the court is not bound by that ruling if additional facts are presented at the summary judgment stage or if additional legal authority persuades the court that its legal conclusions should be revised.

---

[7] For purposes of summary judgment the court accepts Dale's assertion that he was unaware that any portion of the 1998 Agreement was unenforceable. Defendant's February 8, 2011 SMF ¶ 14. However, the provision that the Agreement "shall not be entered into evidence" if any motion is brought to modify child support (§7a) would permit an inference that Dale's counsel knew or should have known that there was an issue as to enforceability.

7

4. Dale's Arguments as to Indefiniteness, Lack of Mutual Assent, Lack of Consideration, and Violation of Contact and Visitation Rights

The first two arguments raised by Dale are that, because Exhibit A to the Agreement is missing, the Agreement is too indefinite to be enforced and there was no mutual assent. Those arguments do not preclude summary judgment for Faye. Mutual assent is plain on the face of the Agreement, and the Agreement is sufficiently definite to be enforced and is not missing any essential terms. Compare Ault v. Pakulski, 520 A.2d 703, 704-05 (Me. 1986). Moreover, Dale has not identified any significant gaps in the Agreement that Exhibit A was intended to fill. Indeed, if either party were to offer testimony that Exhibit A was intended to be anything but a proposed child support order setting weekly child support at $280, that testimony would be precluded by parol evidence.

In addition, although Dale claims that the Agreement is void for failure of consideration, the reciprocal promises contained in the Agreement constitute adequate consideration, as the Agreement expressly states on page 2.[8]

Dale also argues that he has been released from his obligations because of Faye's alleged violations of the contact and visitation provisions in the Divorce Judgment. The problem with this argument is that the Agreement states on its face that it is intended to be a contract independent of the divorce judgment. Language in the Agreement stating that the Agreement "does not supersede either the second or fourth paragraphs of the said Referee's Report and Divorce Judgment" (Agreement § 10) does not have the effect

---

[8] To the extent that Dale is arguing that there is a failure of consideration once the unenforceable provisions are deleted, unenforceable contract provisions may constitute adequate consideration. Restatement Second Contracts § 78.

of incorporating the Referee's Report and Divorce Judgment into the Agreement. Dale had a separate remedy for any breaches by Faye of the visitation and contact provisions in the divorce judgment, and the August 1998 Agreement does not condition Dale's obligations on Faye's adherence to the divorce judgment.

### 5. Enforceability on Public Policy Grounds

Dale's major remaining argument is that, because agreements not to modify child support are unenforceable as against public policy and because child support agreements are only enforceable if approved by the court, the entire 1998 Agreement should be declared unenforceable, thereby releasing him from his obligation to pay for Abby's college education.

The court agreed in its December 7, 2010 order that the provisions in the 1998 Agreement that purport to preclude any modifications of the parties' child support obligations would have been unenforceable as against public policy. December 7, 2010 order at 1; see Holbrook v. Holbrook, 2009 ME 80 ¶11, 976 A.2d 990, 995. To be enforceable, child support agreements must also be judicially approved. However, in its December 7, 2010 order the court did not agree that the anti-modification provisions and the absence of court approval of the $280 child support figure necessarily rendered Dale's promise to pay college expenses unenforceable, particularly if Dale was the party who had requested or benefitted from the anti-modification provisions. The court retains that view despite the additional authority cited by Dale.

Specifically in Court v. Kiesman, 2004 ME 72 ¶¶ 11-14, 850 A.2d 330, 333-34, the Law Court held that it would not enforce an agreement between parents relieving a father from his child support obligations for three years in exchange for a 10 year old truck. The court stated that it "would not enforce a contract that contravenes public

9

policy." Id. ¶ 11, 850 A.2d at 333. Court v.Kiesman did not involve a situation where there were additional provisions of the agreement between the parents that did not contravene public policy. Court v.Kiesman was also a case where a parent was seeking to avoid his obligation to pay child support and thereby to frustrate the legislative goal of protecting the economic welfare of children whose parents are divorced. See id. ¶ 9, 850 A.2d at 332.

In the case at bar Faye is not seeking to avoid paying child support; she is instead seeking to enforce a separate provision of the agreement that does not violate public policy. This case would only be comparable to Court v. Kiesman if the agreement in that case had contained a provision requiring the father to pay college expenses and if the father were arguing that because the mother had agreed to accept a truck in lieu of child support, she was therefore barred from seeking the college expenses that she had been promised.

Similarly, in Fisco v. Department of Human Services, 659 A.2d 274 (Me. 1995), a father opposed the collection of child support on the ground that he had agreed with the child's mother to forego any visitation in exchange for a release of his child support obligation. The court ruled that the father was not entitled to rely in such an agreement. 659 A.2d at 275-76. The instant case is distinguishable in that Faye is not seeking to frustrate the legislative policy of ensuring post-divorce child support and is not seeking to enforce a contractual provision that is against public policy.

From a review of the August 1998 Agreement, it can be inferred that the contractual provision precluding any modification of child support was designed to benefit Dale[9] and that Faye agreed to that provision (and potentially accepted a lower

---

[9] One of the recitals of the Agreement states that since the divorce, Dale's income "has increased considerably more substantially than Faye's income."

amount of child support) in exchange for Dale's promise to pay college expenses in the future. If so, the court would find that Dale cannot escape his obligation to pay Abby's college expenses by arguing that the anti-modification provisions of the Agreement violated public policy.

However, the court is not able to grant summary judgment to Faye on this issue because, on a motion for summary judgment, it must draw all inferences in favor of the party opposing summary judgment. The existing summary judgment record does not establish beyond dispute that Dale should be required to pay Abby's college expenses. For instance, the summary judgment record does not establish that the anti-modification provisions were sought by Dale, that those provisions were designed to benefit him, or that they did in fact benefit him. The summary judgment record also does not establish the circumstances under which Exhibit A to the 1998 Agreement was omitted and the circumstances under which no court approval of the amended child support figure was ever obtained. The court concludes that the parties are entitled to offer evidence on these issues before it can finally rule on whether Dale's college obligations are enforceable.

6. Dale's Unjust Enrichment Claim

In his cross motion for partial summary judgment, Dale seeks summary judgment on an unjust enrichment claim for all amounts he paid in child support in excess of the $ 196.00 child support order entered by the court in February 1997. The short answer to this argument is that unjust enrichment is an equitable claim, and on this record Dale has not established that it is "inequitable for [Faye] to retain the benefit" of those payments, see Platz Associates v. Finley, 2009 ME 55 ¶ 27, 973 A.2d 743, 750, simply because the court never approved the $280.00 weekly child support

11

amount Dale paid after July 1998. Whether Dale is entitled to any recovery on this claim will depend, inter alia, on the relative incomes of the parties during the time on question and may be affected by the relative responsibility of the parties for the failure to obtain court approval.

### 7. College Application and Dorm Room Supplies

Dale objects to Faye's request for reimbursement of Abby's SAT class expenses, tutoring costs, application fees, and dorm room supplies. Faye has not offered any reason why the court should not resolve the issue of whether those expenses are recoverable by looking to the language of the August 1998 Agreement. That agreement limits Dale's obligation to "all expenses incurred by Abby for tuition, room, board, books and activity fees for up to four (4) academic years." Agreement § 3. The additional expenses sought by Faye do not fall within the language of the Agreement and are not recoverable.

The entry shall be:

Plaintiff's motion for partial summary judgment is denied. Defendant's cross-motion for partial summary judgment is granted in part with respect to the dismissal of plaintiff's claims for SAT class expenses, tutoring costs, application fees, and dorm room supplies. In all other respects defendant's cross-motion for partial summary judgment is denied. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June _29_, 2011

Thomas D. Warren
Justice, Superior Court

12

FAYE B SANDLER VS DALE T LALONE
UTN:AOCSsr  -2010-0093670                     CASE #:PORSC-CV-2010-00443
---------------------------------------------------------------------------

01 0000003300              SCHEFFEE, ELIZABETH
    215 COMMERCIAL STREET PO BOX 4801 PORTLAND ME 04112-4801
      F      FAYE B SANDLER                          PL        RTND    09/02/2010
      F      ABIGAIL LALONE-3RD PARTY BENEFICIARY    PL        RTND    12/23/2010

02 0000000297              ZIMMERMAN, BARRY
    53 EXCHANGE ST PO BOX 597 PORTLAND ME 04112-0597
      F      DALE T LALONE                           DEF       RTND    09/27/2010

03 0000009575              BOXER-MACOMBER, LAURI
    53 EXCHANGE ST PO BOX 597 PORTLAND ME 04112-0597
      F      DALE T LALONE                           DEF       RTND    09/27/2010