MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 88
Docket:      Pen-17-170
Argued:      October 11, 2017
Decided:     July 3, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent:     JABAR, J.

SHELLY R. HIGGINS

v.

TODD A. WOOD

SAUFLEY, C.J.

[¶1]  In this appeal, and a separate opinion issued today, *see Dep't of Health & Human Servs. v. Fagone*, 2018 ME 89, --- A.3d ---, we clarify the circumstances in which a court order that anticipates a change in child support upon the occurrence of future events will be self-effectuating.  In the matter before us, we conclude that the court's order requiring Todd A. Wood to pay a specific amount of child support to Shelly R. Higgins did not contain a self-effectuating provision that immediately reduced Wood's child support payments upon his oldest child reaching age eighteen.  We also conclude that neither administrative collateral estoppel nor administrative equitable estoppel was properly raised and therefore those doctrines cannot provide a

remedy to Wood. Accordingly, we affirm the judgment on Wood's post-divorce motions in which the District Court (Bangor, *Lucy, J.*) ordered changes in Wood's child support effective only after Wood's service of the post-divorce motion to modify.

## I. BACKGROUND

[¶2] The following facts are drawn from the procedural record and from the family law magistrate's (*Chandler, M.*) findings of fact, reached upon a stipulated documentary record and adopted by the District Court (*Lucy, J.*). *See Dunwoody v. Dunwoody*, 2017 ME 21, ¶ 7, 155 A.3d 422. Higgins and Wood were married in May 1997 and have three children who were born in 1991, 1998, and 2001.

[¶3] Higgins filed a complaint for divorce on March 20, 2007, and a family law magistrate (*Langner, M.*) entered a divorce judgment on June 14, 2007, that provided for Higgins to have primary residence and required Wood to pay child support of $297.15 per week for the three children, who were then ages fifteen, nine, and five. The child support worksheet attached to the judgment provided as follows with respect to the overall weekly support obligation of the parents:

> Basic weekly support for all children up to 18 years (or up to 19 years if still in high school) . . . .
>
> a     Total number of children <u>3</u>

b Number of children ages 0-11 <u>2</u> multiplied by amount from table <u>102 X 2 = 204</u>

c Number of children ages 12-17 <u>1</u> multiplied by amount from table <u>126</u>

The court added in the $35 cost of health insurance for the three children without apportioning it per child. The order made Wood responsible for ninety-one percent of the weekly support and credited him for paying the cost of health insurance, resulting in the $297 weekly support amount that was required by the judgment for support of the three children. The child support order stated:

> The child support obligation shall continue for each child until that child reaches the age of 18; provided, however, that if the child has not graduated, withdrawn, or been expelled from secondary school as defined in Title 20-A, the child support shall continue until the child graduates or reaches the age of 19, whichever occurs first[.]

[¶4]  In addition, the order stated, "Any party to this action may ask the court to review the amount of child support and if appropriate, to modify it in accordance with the state's child support guidelines. To start this process, a party must file with the court a Motion to Modify."

[¶5]  To assure that Wood met his child support obligations, Higgins pursued support enforcement through the Department of Health and Human Services Division of Support Enforcement and Recovery, which withheld

4

Wood's wages to provide Higgins with the ordered child support beginning in the middle of 2008. In 2009, the oldest child turned eighteen, having already graduated from high school. At about that time, Wood asked the Department to reduce his payments, though he did not move to modify the judgment in the District Court.[1] The Department made no adjustment at that time.

[¶6] Wood continued to pay child support in the amount ordered and took no further action until February 2015 when his telephone calls to the Department prompted the Regional Manager of the Department's Division of Support Enforcement and Recovery to send him a notice that the Department was adjusting the child support obligation down to $182 per week. The $182 amount was apparently intended to reflect a flat reduction of the basic weekly support by the $126 amount originally allocated to the oldest child in the 2007 child support worksheet, with the health insurance provisions remaining the same despite the termination of support for one child, and the support amounts for the other two children remaining unchanged despite the increases that should have occurred when each of the younger children reached age twelve.

---

[1] The Department's case notes indicate that Wood first telephoned the Department about his oldest child reaching age eighteen in 2009, and Wood was then informed that the "blanket order" that was in place did not authorize a change in the amount of child support. Wood called about the issue again in February 2015.

At the time of the February 2015 letter, the two younger children were ages seventeen and thirteen.

[¶7]  Several months later, in July 2015, the Director of the Division informed Wood that the February decision was in error and that Wood needed to file, in court, a motion to modify the child support order to seek any reduction in the ordered support.

[¶8]  On July 24, 2015, Wood filed two motions in the District Court—a motion to modify and a motion for determination of overpayment.  He argued that he had overpaid by more than $35,000 over the course of six years because, after the oldest child turned eighteen, his child support obligation should have been reduced by $114 per week.  Although the use of the summary judgment process in family law matters is not authorized, *see* M.R. Civ. P. 56(a),[2] Wood also moved for summary judgment on his post-judgment motions, submitting a statement of material facts and supporting evidence.  In the motion for summary judgment, he raised issues of administrative collateral estoppel and

---

[2]  The Maine Rules of Civil Procedure do not allow for motions for summary judgment on post-judgment motions in family matters.  *See* M.R. Civ. P. 56(a) ("A party seeking to recover upon a *claim, counterclaim, or cross-claim or to obtain a declaratory judgment* may move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." (emphasis added)).  It was through such an impermissible motion that Wood raised administrative collateral estoppel and equitable estoppel issues.

6

equitable estoppel. The parties filed opposing and reply memoranda and statements of material facts.

[¶9] On March 21, 2016, the family law magistrate (*Chandler, M.*) held a hearing.[3] The parties informed the magistrate that they had agreed to a series of three child support orders to apply from the filing of Wood's motion, in July 2015, forward. The first of these orders imposed an obligation of $280.50 per week toward the support of the two youngest children through January 2016 when the middle child turned eighteen. The order explicitly provided that the support would decrease to $207.56 upon the youngest child becoming the only child for whom support was owed, and the final order required Wood to pay $187 per week beginning in August 2016 based on the Department's revised child support table. *See* 17 C.M.R. 10 144 351-15 to -23 (2016).

[¶10] The magistrate then accepted a collection of stipulated exhibits, and the parties offered legal arguments regarding the amount of child support owed from the oldest child's eighteenth birthday in 2009 through the July 31, 2015, effective date of the first agreed-upon order. Thus, the court held

---

[3] Despite his own assertion through his motion for summary judgment that there were no genuine issues of material fact, Wood submitted a witness list after receiving a hearing notice and objected to proceeding with a nonevidentiary hearing. Ultimately, the magistrate accepted stipulated exhibits and heard legal arguments, as explained further below.

the trial on a stipulated record, and the parties presented argument on the applicable law. *See Rose v. Parsons*, 2015 ME 73, ¶ 8, 118 A.3d 220.

[¶11]  The magistrate entered the modified child support orders to which the parties had agreed.  The magistrate then concluded that Wood could not recover any overpayment for child support paid prior to his service of the motion to modify because the parties' 2007 judgment did not provide dollar amounts by which the child support order would self-adjust upon each child's emancipation or attainment of the age of twelve.  The court ordered the Department to determine any amount of overpayment or underpayment that may have arisen while the motion to modify was under consideration by the court.

[¶12]  The Department filed an unopposed motion to amend the findings of fact to correct minor factual errors, which the magistrate granted.  Wood objected to the magistrate's order on the grounds that the magistrate applied the incorrect law and that only a judge—not a magistrate—had the authority to rule on the motion for summary judgment.  *See* M.R. Civ. P. 118(a).

[¶13]  The court (*Lucy, J.*) reviewed the magistrate's decision and entered a judgment in which it adopted the magistrate's order on the modification of child support, agreed with the magistrate that the Department did not have the

8

authority to adjust the court-ordered amount of child support, and concluded that summary judgment must be denied, in part because a party may not move for summary judgment on a post-judgment motion in a family matter. *See id.* With respect to the alleged overpayment, the court explained that, because the divorce judgment did not include explicit prospective calculations of child support based on the children reaching age twelve or eighteen, a motion to modify the judgment was necessary for the court to find the proper amount of child support to be paid.

[¶14] Wood appealed from the judgment. *See* 14 M.R.S. § 1901(1) (2017); 19-A M.R.S. § 104 (2017); M.R. App. P. 2 (Tower 2016).[4] The Department filed a brief that included a "supplement" consisting of the child support worksheet and order from *Lund v. Lund*, a District Court case that resulted in an opinion from us. 2007 ME 98, 927 A.2d 1185. Wood objected and moved to strike the supplement because it was not in the record available to the trial court.[5] We ordered that the issue would be considered along with

---

[4] The appeal was filed before September 1, 2017; hence, the restyled Maine Rules of Appellate Procedure do not apply. *See* M.R. App. P. 1 (restyled). We cite to the applicable rules throughout this opinion, except as indicated.

[5] Wood also moved to strike certain arguments made by Higgins, but we denied that part of Wood's motion.

the merits of the appeal, and we now take judicial notice of the documents submitted by the Department and address the merits of Wood's appeal.  *See* M.R. Evid. 201(b)(2), (d); *cf. In re Jonas*, 2017 ME 115, ¶ 38 n.10, 164 A.3d 120 (explaining that a court may take judicial notice of the action taken by a court in a final judgment).

## II.  DISCUSSION

[¶15]  Wood argues that the child support order included in the 2007 divorce judgment provided for a self-effectuating reduction in the amount of child support when the parties' oldest child turned eighteen in 2009 and that he is therefore entitled to recoup an overpayment of child support.  Here, we use the term "self-effectuating" to describe a provision in a judgment that explicitly articulates a change in a support obligation on an identified date or upon the occurrence of a specific event, such that the new, explicitly identified amount takes immediate effect and is enforceable.  In other words, we have substituted the term "self-effectuating" for the longer description used previously for a "self-executing provision that automatically amends a court order" upon the occurrence of a specific event or the arrival of a specific date. *Bartlett v. Anderson*, 2005 ME 10, ¶ 12, 866 A.2d 829.

[¶16]   To review whether the judgment at issue here was self-effectuating such that Wood was entitled to reduce his payments without further order of the court, we (A) summarize the alternative administrative and court processes for establishing and modifying child support, (B) examine the law governing self-effectuating adjustments in court-issued child support orders, (C) review whether the District Court properly applied the law, and (D) address the application of principles of collateral and equitable estoppel.

A.    Methods of Establishing and Modifying Child Support Orders in Maine

[¶17]   In Maine, there are different methods for parents to obtain enforceable orders of child support.  Most commonly, a parent will seek a child support order through (1) the Department in an administrative proceeding, *see* 19-A M.R.S. § 2304 (2017); 17 C.M.R. 10 144 351-36 to -41, ch. 8 (2016), or (2) the District Court in an action for divorce or for the determination of parental rights and responsibilities, *see* 19-A M.R.S. §§ 901, 1652, 1653(2)(D)(3), 1653(8) (2017).[6] We summarize the methods for establishing and enforcing each of these types of orders.

---

[6] A court order of child support may be entered in other contexts, as well, and our holding today applies equally to any court-ordered support.  *See, e.g.*, 19-A M.R.S. § 1654 (2017) (parents living apart); 19-A M.R.S. § 4007(9) (2017) (protection from abuse); 22 M.R.S. § 4038-C(4) (2017) (permanency guardianship).

1.      Department-Issued Child Support Orders

[¶18]  The Department—acting "on its own behalf or on behalf of another state or another state's instrumentality, an individual or governmental applicant for services under section 2103 [support enforcement] or a person entitled by federal law to support enforcement services as a former recipient of public assistance"—may "establish the responsible parent's current parental support obligation" applying the statutory child support guidelines and the statute governing deviation from the guidelines.  19-A M.R.S. § 2304; *see* 19-A M.R.S. §§ 2001-2012 (2017) (child support guidelines);[7] 17 C.M.R. 10 144 351-37 to -39, ch. 8, § 9.

[¶19]  A party may seek administrative review of a Department decision establishing the child support obligation within thirty days after receiving notice of the decision.  19-A M.R.S. § 2451 (2017); 17 C.M.R. 10 144 351-49, ch. 12, § 2(B)(2)(a), (3)(i) (2017).  If a party seeks to challenge the final decision entered upon administrative review, that party may appeal to the Superior Court for judicial review.  19-A M.R.S. § 2453 (2017); M.R. Civ. P. 80C.  A party

---

[7] Some portions of the guidelines have recently been amended, as discussed further in this opinion below.  *See* P.L. 2017, ch. 30 (effective Nov. 1, 2017) (to be codified at 19-A M.R.S. §§ 1653, 2001, 2006).

has a right of appeal to the Law Court from the Superior Court decision on the Rule 80C appeal. *See* M.R. Civ. P. 80C(m).

[¶20] If there is a substantial change in circumstances after the Department's order becomes final, a responsible parent may seek amendment of the order by the Department through an administrative hearing. *See* 19-A M.R.S. § 2304(8); 17 C.M.R. 10 144 351-40, -50, ch. 8, § 15, ch. 12, § 2(C). All rights to administrative review and appeal to the courts are again available upon the Department's decision. *See* 19-A M.R.S. §§ 2451, 2453; M.R. Civ. P. 80C; 17 C.M.R. 10 144 351-49, ch. 12, § 2(B)(2)(a), (3)(i).

[¶21] If a court enters a child support order after the Department establishes a child support order, the court order will supersede the Department's administrative decision ordering the payment of child support. *See* 17 C.M.R. 10 144 351-40, ch. 8, §§ 14, 16.

2.      Court-Issued Child Support Orders

[¶22] In a court proceeding, whether in a divorce action, in an action to determine parental rights and responsibilities, or in any other family proceeding, the District Court determines the amount of child support by applying the child support guidelines and the statute governing deviation from the guidelines. *See* 19-A M.R.S. §§ 901, 1652, 1653(2)(D)(3), 1653(8),

2001-2012. A party has the right to appeal to us from the child support ordered in the final judgment. *See* 14 M.R.S. § 1901(1); 19-A M.R.S. § 104; M.R. App. P. 2; M.R. App. P. 2A, 2B (restyled).

[¶23] After a judgment ordering the payment of child support becomes final following an appeal or the expiration of the appeal period, a party may seek to enforce the judgment either in court or through the Department. *See* 19-A M.R.S. § 2103(2) (2017); M.R. Civ. P. 120; 17 C.M.R. 10 144 351-40, ch. 8, § 16. A judgment's terms may be enforced by the Department if its terms are unambiguous. *See* 19-A M.R.S. § 2103(2); *Curtis v. Medeiros*, 2016 ME 180, ¶ 8, 152 A.3d 605. If the child support obligations in the court order *are* ambiguous or undefined, only the court that issued the judgment has the "inherent authority to construe and clarify the decision." *Id.*

[¶24] Upon a substantial change in circumstances, a party, including the Department, may file a motion in the District Court seeking to modify the amount of child support, *see* 19-A M.R.S. § 2009(1), and include "[a] proposed order, incorporating the child support worksheet." *See* 19-A M.R.S. § 2009(4-A)(E). The Department has no authority to modify the court's judgment. *See* 19-A M.R.S. § 2009.

14

[¶25]  When the parties reach an agreement to modify the amount of child support that has been established by a court order, the process is straightforward and inexpensive.  No filing fee is required if a motion seeks only to modify child support.  *See* Revised Court Fees Schedule and Document Management Procedures, Me. Admin. Order JB-05-26 (as amended by A. 12-17), § I(A)(2) (effective Jan. 1, 2018).[8]

[¶26]  The entry of a modified order can be addressed promptly if the motion is uncontested and the amount of child support in the proposed order is at least as much as the amount that would be ordered through the ordinary application of the child support guidelines.  19-A M.R.S. § 2009(5), (6).  In such circumstances, if neither party requests a hearing within thirty days after the service of the motion, "the court may enter an order modifying support without hearing using the proposed order."  *Id.*

[¶27]  Only if the moving party proposes a downward deviation or one of the parties requests a hearing on the pending motion will the parties be required to proceed with mediation and, if necessary, a hearing.  *See id.*

---

[8]  The fee schedule has recently been amended, effective July 1, 2018, but there is no fee for filing a motion seeking only the modification of child support.  *See* Revised Court Fees Schedule and Document Management Procedures, Me. Admin. Order JB-05-26 (as amended by A. 7-18), § I(A)(2) (effective July 1, 2018).

[¶28]  Again, a right of appeal to us is available after the entry of a final judgment on the motion to modify.  *See* 14 M.R.S. § 1901; 19-A M.R.S. § 104; M.R. App. P. 2; M.R. App. P. 2A, 2B (restyled).  The final judgment, if unambiguous, may be enforced through the court or the Department.  *See* 19-A M.R.S. § 2103(2); M.R. Civ. P. 120; 17 C.M.R. 10 144 351-40, ch. 8, § 16; *see also Curtis*, 2016 ME 180, ¶ 8, 152 A.3d 605.

[¶29]  Because the original order entered in Higgins and Wood's divorce was issued by a court, a motion to modify was required to be filed in court to change the amount of the child support obligation, unless the original order unambiguously specified an enforceable adjustment.  The question, therefore, is whether the divorce judgment provided for a quantified change in the amount of child support with sufficient specificity that it could be enforced and effectuated through the Department without additional court involvement.

B.     Self-Effectuating Reductions of Court-Ordered Child Support in Maine

[¶30]  A child  support order entered by a court remains in effect as to a child until that child reaches age eighteen or another specified event occurs:

> **Termination of order.**  A court order requiring the payment of child support remains in force as to each child until the order is altered by the court or until that child:
>
> > **A.**     Attains 18 years of age.   For  orders  issued  after January 1, 1990, if the child attains 18 years of age while

> attending secondary school as defined in Title 20-A, section 1, the order remains in force until the child graduates, withdraws or is expelled from secondary school or attains 19 years of age, whichever occurs first;
>
> **B.** Becomes married; or
>
> **C.** Becomes a member of the armed services.

19-A M.R.S. § 1653(12) (2017).  The statute in effect when the parties' divorce judgment was entered authorized, but did not require, the court to "include automatic adjustments to the amount of money paid for the support of a child when the child attains 12 or 18 years of age; or when the child graduates, withdraws or is expelled from secondary school, attains 19 years of age or is otherwise emancipated, whichever occurs first."   19-A M.R.S.A. § 1653(13) (Pamph. 2007).[9]

[¶31]  More than two years before Higgins and Wood were divorced, we considered whether the *Department* had the authority to reduce court-ordered child support obligations upon a child reaching the age of eighteen or the

---

[9] This portion of the statute was repealed, effective November 1, 2017, when the Legislature "amend[ed] the laws governing child support guidelines to conform to changes made by the Department of Health and Human Services by rule that eliminate the age categories in the child support table."  L.D. 364, Summary (128th Legis. 2017); *see* P.L. 2017, ch. 30, § 1 (effective Nov. 1, 2017) (repealing 19-A M.R.S. § 1653(13)).  The Department's revised single-tier table was adopted with an effective date of July 29, 2016.  *See* 17 C.M.R. 10 144 351-15 to -23 (2016).  We do not opine on whether the Department acted within its rulemaking authority to eliminate the age categories in July 2016 when the statutory guidelines still described age categories.  *See* 19-A M.R.S. §§ 1653(13), 2001(1), (11), 2006(1), (6), (7), (8) (2016).

occurrence of another triggering event. *See Bartlett*, 2005 ME 10, ¶¶ 12-20, 866 A.2d 829. The children in *Bartlett* were ages twelve, six, and one at the time of their parents' divorce in 1995. *Id.* ¶¶ 2-3. The judgment required the father to pay $111 per week toward the support of the three children, later increased to $200 per week upon motions to modify. *Id.* ¶¶ 3-4. After the parties' oldest child graduated from high school in June 2001 at the age of eighteen, the Department unilaterally reduced the weekly withholding from the father's salary by one-third. *Id.* ¶ 6. The Department did not, however, unilaterally increase the amount of support when the middle child reached age twelve in July 2001. *Id.*; *see generally* 19-A M.R.S.A. § 2006 (1998) (providing for differing support obligations when a child reaches the age of twelve).[10] Upon the mother's March 2003 motion for post-judgment relief, the District Court determined that, because the Department had no authority to reduce the amount of child support, the father owed the full $200 per week as ordered. *Bartlett*, 2005 ME 10, ¶¶ 8, 10, 866 A.2d 829.

[¶32] We affirmed the judgment, holding that, when a court has entered an order of child support containing a termination provision that does not

---

[10] *See* P.L. 2017, ch. 30 (effective Nov. 1, 2017) (to be codified at 19-A M.R.S. §§ 1653, 2001, 2006) (eliminating age categories from the guidelines for determining child support).

specify the dollar amount of the adjustments, that provision is not self-effectuating, and a motion to modify, filed by the Department or one of the parents, is required so that a court—not the Department or a party—can adjudicate the proper amount of child support. *See id.* ¶¶ 12-17 (citing 19-A M.R.S.A. § 2009 (1998)). We also held that, because child support orders may be modified retroactively only back to the date of service of the motion to modify on the opposing party, the court could not relieve the father of his preexisting obligations incurred before that date. *Id.* ¶ 19 (citing 19-A M.R.S.A. § 2009(2)).

[¶33] In reaction to *Bartlett*, the Legislature amended the child support statute with respect to judgments that were entered before the *Bartlett* decision, requiring,

> With regard to any initial or modified child support order that affects more than one child and that was *entered before January 18, 2005*, unless that order states the manner in which the order must be modified upon the events listed in subparagraphs (1) to (4), that the order be automatically modified pursuant to this paragraph to address any of the following events:
>
> > (1) Any child reaches 18 years of age and has graduated from secondary school;
> >
> > (2) Any child reaches 19 years of age without having graduated from secondary school;
> >
> > (3) Any child obtains an order of emancipation; or

(4) Any child dies.

As of the date of an event listed in subparagraphs (1) to (4), the total child support amount stated in the order must be decreased by the child support amount assigned to that child in the worksheets accompanying the child support order or as set forth in the order.

P.L. 2005, ch. 352, § 5 (codified as subsequently amended at 19-A M.R.S. § 2006(8)(G) (2017)[11]) (emphasis added).

[¶34]  The divorce judgment in the matter before us was entered in 2007—two years after our decision in *Bartlett*.  Thus, by its plain language, section 2006(8)(G) *does not* apply to the matter on appeal.[12]

[¶35]  About one month after Higgins and Wood's divorce judgment was entered in 2007, we decided another matter in which a judgment's provisions regarding the reduction of child support were at issue.  *See Lund*, 2007 ME 98, 927 A.2d 1185.  There, the 1999 divorce judgment provided certain specific

---

[11]  The subsequent amendment to this paragraph merely altered the ending punctuation and added the word "and" to accommodate a new paragraph H.  *See* P.L. 2009, ch. 290, § 15 (effective Sept. 12, 2009).

[12]  To the extent that the use of the date of the *Bartlett* decision in the statute is ambiguous, testimony regarding the legislation indicates that the statute was designed to "eliminate the extremely harsh retroactive application of the decision in *Bartlett*," but leave "orders established or modified after *Bartlett*" to be "calculated according to the holding in that case."  *An Act to Improve Child Support Services: Hearing on L.D. 1589 Before the J. Standing Comm. on Judiciary*, 122d Legis. 3 (2005) (testimony of Stephen Hussey, Director of Division of Support Enforcement & Recovery, Dep't of Health & Human Servs. Bureau of Family Independence).

20

amounts with respect to the youngest of three children reaching the age of twelve:

> Pursuant to the guidelines currently in effect, [the father] shall pay to [the mother] the sum of $ 175.00 per week as child support for the minor children, in accordance with the Court guidelines. When [the youngest child] turns age 12 on May 11, 1999, [the father]'s child support obligation **shall increase to $ 187.00 per week pursuant to the Court guidelines**.

*Id.* ¶ 2 (bold emphasis added) (footnote omitted). The attached child support worksheets provided for a basic weekly support obligation of $88 per child during the ages twelve to seventeen. *Id.* ¶ 2 n.1. The order also included a provision that the obligation would continue for each child until the child reached age eighteen after graduation, graduated at age eighteen, or reached the age of nineteen without graduating, whichever occurred first. *Id.* ¶ 2.

[¶36] The original judgment in *Lund* did not address the increase in the per-child amount of support provided for in the guidelines if only two children were subject to a support order. Although the judgment did not specify the calculations that would apply upon the termination of support for the oldest child, we held that the judgment *did* allow for a self-effectuating adjustment because it ordered changes in support by a specific amount when the youngest child turned twelve and stated the conditions for the termination of the support obligation for each child. *Id.* ¶ 21.

[¶37]  We must acknowledge the confusion that has resulted from the legislative language and from the *Lund* decision regarding self-effectuating changes in child support orders.  In *Lund*, we did not discuss changes in the application of the guidelines based on the number of children subject to a child support order, 2007 ME 98, ¶¶ 4, 22, 927 A.2d 1185, despite our statement in *Bartlett* that "the payment obligation for two children is not automatically two-thirds of the payment obligation for three children," 2005 ME 10, ¶ 13, 866 A.2d 829.

[¶38]  Thus, we now specifically hold that guideline-related adjustments are part of the reason that a motion to modify child support is required if a parent seeks an adjustment that is not explicitly quantified in the existing judgment.  A motion to modify is also necessary if the child support worksheet includes health insurance costs, extraordinary medical expenses, or child care expenses that are not apportioned on a per-child basis.  *See* 19-A M.R.S § 2006(3).  The new amount of such costs or expenses, and any related health insurance adjustment, cannot be calculated without some adjudication of facts by a court.

[¶39]  Because our opinion in *Lund* and other changes in the law have made it difficult for parents and the Department to determine whether a

particular judgment ordering child support for multiple children provides for self-effectuating adjustments that may be immediately implemented, we endeavor to clarify the circumstances in which prospective amendments to the amount of child support ordered by a court are self-effectuating. We now clarify that, for any court judgment ordering the payment of child support entered after *Bartlett*, a change in child support is self-effectuating only if the judgment includes a specific, quantifiable amount of support ordered to replace the original obligation on a specific date or upon the occurrence of a specific event. *See Bartlett*, 2005 ME 10, ¶¶ 12-17, 866 A.2d 829. If a judgment does not provide the necessary specificity, neither a parent nor the Department can determine the amount of support upon that change in circumstances, and a motion to modify is required so that the court can take appropriate action. *See* 19-A M.R.S. § 2009.[13]

[¶40] Because, as we have summarized, court orders entered in different timeframes are treated differently under the law, we provide the following clarification.

---

[13] Although the filing of such a motion may seem burdensome, as we indicated above, it is possible for a judgment to be entered promptly if no hearing is requested and "the proposed modified support obligation is equal to or greater than the obligation resulting from the application of" the applicable support guidelines. 19-A M.R.S. § 2009(6) (2017). In such circumstances, no hearing is required, and the parties' modified order may be entered swiftly. *See id.*

1. For judgments containing child support orders entered before January 18, 2005, a reduction in support may be self-effectuating when a child reaches age eighteen after graduating from secondary school, reaches age nineteen without having graduated from secondary school, obtains an order of emancipation, or dies, unless the order "states the manner in which the order must be modified upon [those identified] events." 19-A M.R.S. § 2006(8)(G). How that reduction is calculated will depend on the language in the child support order.

2. For judgments entered between January 18, 2005, and the recent elimination of the age-tiered child support table, a change in the amount of court-ordered child support is self-effectuating only if the order provides for specifically quantified prospective amounts owed upon dates or specific events explicitly addressed in the order. *See Bartlett*, 2005 ME 10, ¶¶ 12-17, 866 A.2d 829. The actual amount of the anticipated updated child support obligation must be stated in the order.

3. We have yet to opine on whether judgments entered after the elimination of the age-tiered system can be self-effectuating without specifying an adjusted dollar amount. *See* P.L. 2017, ch. 30 (effective Nov. 1, 2017) (to be codified at 19-A M.R.S. §§ 1653, 2001, 2006); 17 C.M.R. 10 144 351-15 to -23. However, given that guideline adjustments occur when the number of supported children changes, and that other components of support, including health insurance and child care costs, may change, an order *will not be self-effectuating upon the aging-out of the oldest child unless the new amounts are expressly stated in that order*. *See* 17 C.M.R. 10 144 351-15 to -23.

[¶41] To assure clarity, reduce costs to the parties, and avoid unnecessary additional process, in those cases where changes should occur without any return to court, all who are involved—judges, magistrates, parties, and counsel—should focus on developing orders that explicitly specify the adjustments to be effectuated when support obligations cease for each child.

[¶42]  The judgment at issue here falls into the second category because it was entered after *Bartlett* and before the elimination of the age-tiered system. For an adjustment in such a child support order to be self-effectuating, the judgment must explicitly identify the amount of child support to be paid when each of the youngest children has reached the age of twelve and when support terminates as to each child.  *See Bartlett*, 2005 ME 10, ¶¶ 12, 17, 866 A.2d 829. Focusing specifically on the termination of child support for the oldest child, judicial decision-making is necessary if the judgment does not specify the amount thereafter owed for the younger children.  *Cf. Teele v. West-Harper*, 2017 ME 196, ¶¶ 12-20, 170 A.3d 803 (holding that a parent must move to modify a judgment to receive a credit for dependent benefits if the credit was not ordered in the original judgment).

C.     Review of the District Court's Application of the Law

[¶43]  In the parties' 2007 divorce judgment, the court ordered Wood to pay $297 per week for support of the three children.  The judgment provided that the child support obligation would terminate for each child upon the child reaching age eighteen or another triggering event, but it did not state the amount of the new support obligation upon the termination of support for each child and did not indicate specific increases upon each younger child reaching

age twelve. Also, the accompanying child support worksheet did not allocate the cost of health insurance on a per-child basis.

[¶44] Given the language of the court order in effect on the eighteenth birthday of the oldest child, no automatic adjustment was possible. Although the worksheet accompanying the 2007 child support order identified the basic weekly support amount for the parties' oldest child as $126 while Wood was responsible for support for three children at younger ages, the order did not specify the amount of support owed upon the termination of support for the oldest child, an event that occurred only after one of the younger children had reached age twelve. Absent such specificity, the court could not enforce any amount other than that specified in the 2007 divorce judgment. The court therefore properly limited Wood to the remedy of moving to *modify* the child support order to determine how much support was owed for the two younger children.

[¶45] Once Wood did move to modify the amount of child support, the court, based on the parties' agreement, ordered a very modest change in the amount of support owed for the period beginning when the motion to modify was served. The obligation for that period was reduced from $297 per week to $280.50 per week. The court, again based on the parties' agreement, also

entered modified child support orders providing for exact modifications on specific future dates based on the children's changes in age and a change in the child support table. *See* 19-A M.R.S. § 2009(2); 17 C.M.R. 10 144 351-15 to -23. Because the original judgment lacked this degree of specificity, however, the court correctly concluded that, in the absence of a motion to modify, no change in the amount of child support took effect upon the oldest child reaching age eighteen.

[¶46] To consider fully Wood's argument that he has overpaid by more than $35,000, we attempt to estimate the amount of support that would have resulted from an application of the guidelines if Wood had filed a motion to modify immediately when the oldest child reached age eighteen. Although Wood contends that the 2007 child support worksheet establishes the amount owed for each child, the amount owed per child increased pursuant to the guidelines if there were only two children subject to a child support order, and the amount owed for a younger child increased when the child reached age twelve. *See* Child Support Guidelines and Calculation Tables (effective Dec. 1, 2008), *available at* 19-A M.R.S.A. § 2011 (Pamph. 2010); *see also* Child Support Guidelines and Calculation Tables (effective Feb. 8, 2014), *available at* 19-A M.R.S.A. § 2011 (Supp. 2015).

[¶47] Assuming that the cost of health insurance for two children was identical to the cost for coverage for all three children, and assuming that each party's income remained the same, had Wood filed a motion immediately after his oldest child's eighteenth birthday, we estimate that his total child support obligation pursuant to the guidelines in 2009 would only have been reduced by approximately $51 per week, not the $114 per week that he asserts could be subtracted from the original obligation. *See* Child Support Guidelines and Calculation Tables (effective Dec. 1, 2008). Moreover, the child support table was updated over time, and based on the table in effect from 2013 when the youngest child turned twelve through 2015 when Wood moved to modify, Wood's obligation for the two youngest children would have *exceeded* the originally ordered $297 per week in child support for the three children. *See id.*; Child Support Guidelines and Calculation Tables (effective Feb. 8, 2014). Therefore, even if Wood had filed a motion to modify immediately upon the oldest child reaching age eighteen, it is unlikely that his child support obligation would have been reduced over the years at issue by the substantial amount that Wood claims.[14]

---

[14] Recognizing that a retrospective calculation without the benefit of the parties' input is an imperfect vehicle for accuracy, we acknowledge that these numbers are estimates.

28

[¶48]  Although the dissent posits that our holding produces an unfair result, any interpretation of the law in this area will produce a result that may seem unfair to one party or the other.  Due to the divorce judgment's language and the identified ambiguities in our earlier case law, neither Higgins nor Wood could be certain about the amount of support owed after the oldest child reached age eighteen.  Interpreting the judgment as we have, Wood has paid somewhat more than he would have pursuant to the child support guidelines then in effect.  *See* Child Support Guidelines and Calculation Tables (effective Feb. 8, 2014); Child Support Guidelines and Calculation Tables (effective Dec. 1, 2008).  If we were to interpret the change in support as Wood suggests, however, Higgins—the parent providing primary residence for the children— would have received significantly less than the amount of child support that she was entitled to pursuant to those guidelines.  *See* Child Support Guidelines and Calculation Tables (effective Feb. 8, 2014); Child Support Guidelines and Calculation Tables (effective Dec. 1, 2008).  It is hoped that today's clarification of the law will increase certainty and predictability for families and the Department and avoid this shifting sense of unfairness in the future.

D.    Administrative Collateral Estoppel and Equitable Estoppel

[¶49]   Wood raised issues of administrative collateral estoppel and equitable estoppel in his motion for summary judgment, and he now argues that the court erred in failing to grant him relief pursuant to those doctrines.

[¶50]   The Maine Rules of Civil Procedure do not allow for motions for summary judgment on post-judgment motions in family matters.  *See* M.R. Civ. P. 56(a) ("A party seeking to recover upon a *claim, counterclaim, or cross-claim or to obtain a declaratory judgment* may move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." (emphasis added)).  Thus, these arguments were not properly raised in the District Court, and neither the magistrate nor the District Court could adjudicate the issues.  Wood did not seek conclusions of law concerning either of these doctrines after the court entered its judgment on the post-divorce motions.  *See* M.R. Civ. P. 52.

[¶51]   Thus, although Wood has argued the doctrines of administrative collateral estoppel and equitable estoppel on appeal, these arguments were never properly presented to the trial court for consideration.  We cannot, in this procedural posture, provide any meaningful appellate review.

[¶52]  Moreover, even if the issues had been presented properly, Wood could not prevail.  Although Wood contends that Higgins and the Department may not relitigate the determination that the Department reached in its February 2015 letter, administrative collateral estoppel cannot preclude a court from ruling on a legal issue presented through a motion to modify court-ordered child support.  *See Larrivee v. Timmons*, 549 A.2d 744, 747-48 (Me. 1988); Restatement (Second) of Judgments § 83(4)(b) (Am. Law Inst. 1982) (stating that relitigation of an issue decided in an administrative proceeding is not precluded "if according preclusive effect to determination of the issue would be incompatible with a legislative policy that . . . [t]he tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question"); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); 19-A M.R.S. § 2009 (authorizing a court—not the Department—to modify court-ordered child support).

[¶53]  As to equitable estoppel, there is no indication in the stipulated evidence that Wood took action to his detriment in reasonable reliance on either Higgins or the Department, to the extent that the Department can be

considered Higgins's agent. *See Dunwoody*, 2017 ME 21, ¶¶ 13-14, 155 A.3d 422.[15]

### III. CONCLUSION

[¶54] Judgments in family matters should provide certainty that the amount of court-ordered child support will remain in place unless and until that amount is either (1) superseded by a predictable, prospectively designated amount that is explicitly stated in the child support order itself or (2) modified by the court upon a proper motion. We have not authorized, and do not here authorize, self-help in changing the amount of child support. *See Lund*, 2007 ME 98, ¶ 21, 927 A.2d 1185; *Bartlett*, 2005 ME 10, ¶ 17, 866 A.2d 829.

---

[15] On these facts, even had Wood properly presented the facts and law in support of his equitable claim, he would not have prevailed, given the general purpose of equity to provide a remedy only where the rigid application of the law results in an injustice. *See Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 19, 964 A.2d 630; *see generally* John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 67, at 89 (5th ed. 1941). After Wood's oldest child reached age eighteen, Wood continued to pay the mother of his three children $297 per week ($15,444 per year) for six years while she continued to provide the primary residence for their two younger children. Wood did not move to modify the court order until 2015 despite the notice within the judgment that a change in the judgment required the filing of such a motion. He now seeks to require Higgins to return at least one-third of the amount that he paid—approximately $35,000—while Higgins continues to provide the primary residence for their youngest child, who will not reach age eighteen until 2019.

In sum, the amount Wood seeks is far in excess of the reductions that the guidelines would likely have established upon the pertinent changes in the children's ages, he was made aware in the judgment of the necessity to file a motion to modify if any circumstances changed, and any overpayments went toward the support of his own children. A court would not be likely to provide an equitable remedy in such circumstances. *Cf. Pelletier*, 2009 ME 11, ¶ 19, 964 A.2d 630 ("Equitable estoppel must be evaluated with circumspection and applied judiciously in the context of child support actions brought by the Department.").

Contrary to the concerns expressed by the dissent, this clarification and certainty of process will *reduce* litigation and prevent the stress and surprise that happened here when a parent, after paying a specific amount of child support for six years, sought to reclaim thousands of those dollars from his children's mother.

[¶55]  When a judgment entered after January 18, 2005, does not include an explicit amount for the future obligation, a new court order will be necessary to establish the amount owed when circumstances change.  *See Bartlett*, 2005 ME 10, ¶¶ 12-17, 866 A.2d 829.  Neither a parent nor the Division of Support Enforcement and Recovery may unilaterally reduce the amount of court-ordered support owed when the judgment does not specify the amount of the reduction.  The parties, however, may quickly and inexpensively obtain an updated order of child support when they agree upon a new amount that is at or above the amount established by the child support guidelines.  *See* 19-A M.R.S. § 2009(5), (6); Revised Court Fees Schedule and Document Management Procedures, Me. Admin. Order JB-05-26 (as amended by A. 7-18), § I(A)(2) (effective July 1, 2018).

[¶56] The court did not err in concluding that Wood was not entitled to recover a substantial portion of the child support that he paid to Higgins before he served his motion to modify on her. Accordingly, we affirm the judgment.

The entry is:

Judgment affirmed.

---

JABAR, J., dissenting.

[¶57] I respectfully dissent because I believe that the Court ignores the plain language of the statute and imposes additional burdens on family law litigants that the Legislature neither intended nor anticipated.

A. Plain Meaning of the Statute and the Court Order

[¶58] When we are required to interpret text—in legislation and in contracts—we are first and foremost guided by the principle that the plain language of the statute or document controls our analysis. *See Griffin v. Griffin*, 2014 ME 70, ¶ 18, 92 A.3d 1144; *Daniel G. Lilley Law Office, P.A. v. Flynn*, 2015 ME 134, ¶ 17, 129 A.3d 936. We are similarly guided by this concept when tasked with interpreting court orders. *See Burnell v. Burnell*, 2012 ME 24, ¶ 15, 40 A.3d 390. Led by this bedrock tenet, the analysis in this case must begin with

an examination of the plain language of 19-A M.R.S. § 1653(12)(A) (2017), which states,

> **12. Termination of order.**  A court order requiring the payment of child support remains in force as to each child until the order is altered by the court or until that child:
>
> **A.**  Attains 18 years of age. . . .

[¶59]  As written, the language of section 1653(12)(A) is simple, logical, and clear.  Keeping in mind that roughly seventy-five percent of the litigants in family court navigate the system without an attorney, 2014 Me. Laws 1654 (State of the Judiciary address of Chief Justice Leigh I. Saufley to 2d Reg. Sess. of 126th Legis.), the language in section 1653(12)(A) clearly states that when a child turns eighteen, the order, as to that child, is no longer in force.  Despite this clarity and simplicity, the Court now engrafts two new requirements upon section 1653(12)(A): (1) a self-effectuation concept that is not present in the plain language of the statute, and (2) an affirmative duty upon litigants to initiate litigation that the statute neither anticipates nor requires.  Court's Opinion ¶¶ 1, 15, 54-55.

[¶60]  After today's Opinion, if an obligor has more than one child, that obligor can no longer look to the plain language of section 1653(12)(A) in order to know what happens when one of their children turns eighteen.  Section

1653(12)(A) is no longer sufficient on its own. The Court uses the new term, "self-effectuating," which does not appear in case law, in statute, or in the court order at issue in this case. Court's Opinion ¶¶ 1, 15. In *Bartlett v. Anderson*, the Court used the term "undifferentiated" to refer to the child support order, which did not provide a different amount when one child, but not the others, had reached the age of eighteen. 2005 ME 10, ¶ 13, 866 A.2d 829. In other words, undifferentiated orders do not distinguish between the amount owed for each child, but, rather, contain only one figure to represent the amount owed for all children. The *Bartlett* Court said that "section 1653(12) *specifies no formula or method* to adjust payment obligations when one child, among several covered by a single, undifferentiated child support payment obligation, reaches age eighteen." *Id.* (emphasis added).

[¶61] Here, the Court's use of the term "self-effectuating" effectively amends section 1653(12)(A) to include a provision that the Legislature did not provide for in the statute. However, contrary to the Court's conclusion, an order can differentiate the amount owed for each child *without* creating a formula for calculating the remaining support owed for the children still under age eighteen. By interposing the concept of a "self-effectuating" order, the Court today takes the "undifferentiated" language from *Bartlett* one step further.

Ultimately, the Court should not amend the statute to include a provision that it acknowledges the Legislature did not contemplate in the statute.

[¶62]  The Legislature did not qualify the straightforward plain language of the statute by adding that, *if there are other children, then the order remains in effect beyond the oldest child's eighteenth birthday, until such time that the court makes adjustments to the order.*  Despite the absence of this or similar language in the statute, the Court today amends the plain language of section 1653(12)(A) to include this new requirement.  Court's Opinion ¶ 40.  Such a statutory amendment should be left to the Legislature.

[¶63]  Turning to this case, the child support order, which mirrors the statute, is clear: "The child support obligation shall continue for each child until that child reaches the age of 18 . . . ."  The child support worksheet, which is incorporated into the child support order, distinguishes between the amount owed for the oldest child and the amount owed for the younger children. Based on the worksheet, it is a simple task to determine how much child support is attributed to the eighteen-year-old.  The language in the order is clear and unambiguous and should therefore be given its full weight and effect.  The overall child support obligation should have been reduced by the amount

specified in the child support worksheet attributed to the oldest child when that child turned eighteen.

B.     Reliance on *Bartlett*

[¶64]  As the Court acknowledges, subsequent to *Bartlett*, the Legislature passed legislation to circumvent the harshness of the holding in that case. Court's Opinion ¶ 33; P.L. 2005, ch. 352, § 5 (codified as subsequently amended at 19-A M.R.S. § 2006(8)(G) (2017)).[16]  Because of this legislative action, any reliance on *Bartlett* is misplaced.

[¶65]  The new legislation placed the burden on the courts, not the obligor, and put the obligee, in this case, the State, on notice of the need for an order that makes an automatic adjustment when there are children who have not yet attained the age of eighteen.  *See* 19-A M.R.S. § 2006(8)(G).  When the court fails to include such a "self-effectuating" provision in an order, and the obligee fails to secure such an order, then the plain meaning of the order and the statute should prevail: the obligor's obligation for a child ends when the child reaches age eighteen.

---

[16]  As the Court intimates, the subsequent amendment has no relevance here.  Court's Opinion ¶ 33 n.11.

[¶66]     Furthermore, *Bartlett* did not turn on the need for a "self-effectuating" order; rather, it turned on the distinction between differentiated and undifferentiated orders.  *See Bartlett*, 2005 ME 10, ¶ 17, 866 A.2d 829.    The *Bartlett* Court concluded that the order was undifferentiated.  *See id.*  However, based on the incorporated child support worksheet in *Bartlett*, it is arguable that the order there, like the order here, was differentiated because the worksheet delineated the different amounts owed for the children based upon their ages.  The *Bartlett* opinion does not demonstrate whether that issue—differentiated versus undifferentiated—was fully litigated on appeal.

C.    Conclusion

[¶67]  With its opinion today, the Court is not only legislating new requirements for litigants involved in family matters, it is increasing the volume of litigation and making the process exceedingly more complicated for the many self-represented litigants in family court.  Given the plain language of both section 1653(12)(A) and the order in this case, when the child attained the age of eighteen, the child support obligation for that child should have terminated without the need for the obligor to return to court.

---

Ezra A. R. Willey, Esq. (orally), Willey Law Offices, Bangor, for appellant Todd A. Wood

Wayne Doane, Esq., Exeter, for appellee Shelly R. Higgins

Janet T. Mills, Attorney General, Thomas A. Knowlton, Asst. Atty. Gen. (orally), and Debby Willis, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Bangor District Court docket number FM-2015-459
FOR CLERK REFERENCE ONLY