MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 143
Docket:        Yor-19-57
Submitted
  On Briefs:   June 26, 2019
Decided:       September 10, 2019
Revised:       March 31, 2020

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

JAMES A. SULIKOWSKI

v.

SANDRA L. SULIKOWSKI

HUMPHREY, J.

[¶1]  James A. Sulikowski and Sandra L. Sulikowski each appeal from an order modifying child support and spousal support entered in the District Court (Biddeford, *Cantara, J.*), each asserting that the court erred in determining the parties' incomes, modifying the child and spousal support orders, and denying his or her request for attorney fees.  We discern no error except in the court's calculation of the child support obligation, vacate and remand the child support order to be corrected by the court, and affirm the judgment in all other respects.

I.  BACKGROUND

[¶2]  Viewed in the light most favorable to the court's judgment, the record supports the following facts.  *McBride v. Worth*, 2018 ME 54, ¶ 2, 184

A.3d 14. The parties were married in 2000 and divorced in 2014; they have three young children. In the divorce judgment, the court (Biddeford, *Douglas, J.*) found that James's income was $98,500 and imputed income to Sandra of $38,000. The divorce judgment also established shared parental rights and responsibilities and shared primary residence, and ordered James to pay child support and spousal support.[1]

[¶3] On November 1, 2016, Sandra filed a motion to modify child support, alleging that James's income had increased substantially since the divorce. On February 2, 2018, James filed a motion to terminate spousal support, alleging that Sandra had experienced a substantial change in circumstances in that (1) her income had increased substantially and (2) she had been cohabitating in a mutually supportive relationship functionally equivalent to marriage for twelve of the previous eighteen months. *See* 19-A M.R.S. § 951-A(12)(2018). The motions were considered at a consolidated hearing on December 20 and 21, 2018.

[¶4] At the hearing on the motions, the court heard testimony from Sandra, Sandra's partner, Sandra's accountant, James, and James's expert

---

[1] The judgment also required the parties to share certain healthcare expenses, including orthodontic expenses, with James paying 72% and Sandra paying 28%.

witness—a forensic accountant. Sandra testified that her income in each of the prior several years was between $32,483 and $47,713, and that a recent injury had diminished her earning capacity. Applying certain accounting techniques and assumptions to various bank statements and profit-loss data from Sandra's businesses, the forensic accountant estimated that Sandra's annual income likely ranged from $113,174 to $144,501 in the same time period. The court also heard testimony from James and the forensic accountant that James's income, which consists of a base salary and additional income from grants and consulting services, varies from year to year but averaged $120,247 per year from 2014 to 2017.

[¶5] The court found that Sandra's gross annual income is $76,000, "twice the income imputed to her at the time of the divorce." In addition, the court found that Sandra "routinely" underreported her overall income, did not report income from one of her businesses "with any degree of accounting accuracy," and kept records that were "astonishingly and conspicuously lacking in accuracy and reliability." The court found that James's income is $120,247, and denied James's request to terminate spousal support, but reduced his obligation by half, finding that the evidence "falls far short of establishing" that

4

Sandra was in a relationship similar to marriage and that an equitable need for general spousal support persisted.[2]  *See* 19-A M.R.S. § 951-A (2018).

[¶6]  Regarding child support, the court mistakenly calculated James's child support obligation using the figures for two children, instead of three, from the child support table promulgated by the Department of Health and Human Services.  *See* 10-144 C.M.R. ch. 351, ch. 6, § 2 (effective July 29, 2016).  Although the court's child support order correctly indicated that sixty-one percent of the children's medical expenses would be allocated to James and thirty-nine percent to Sandra, based on their relative incomes, *see* 19-A M.R.S. § 2006(4) (2018), the supplemental worksheet attached to that order allocated fifty-one percent of these expenses to James and forty-nine percent to Sandra.

[¶7]  From these factual findings, the court (1) modified James's child support obligation; (2) reduced, but did not terminate, James's spousal support obligation and ordered Sandra to repay James $3,750 for his overpayment of spousal support; (3) denied attorney fees to each side; and (4) maintained the other provisions of the underlying divorce judgment.

---

[2]  The court found that James's "gross income is now $120,000," but also found that "for the calculation of child support" James's gross income is $120,247.  Because the child support worksheet included the $120,247 figure, to the extent the court's use of the $120,000 figure in determining the spousal support award was in error, as opposed to merely a rounding of the amount to the nearest thousand, that error was in James's favor and is therefore harmless as to his appeal.  M.R. Civ. P. 61.

[¶8]  Following the entry of judgment, both parties timely filed motions for further findings and reconsideration.  M.R. Civ. P. 52(b), 59(e).  The court denied both motions and both parties now appeal.

## II.  DISCUSSION

### A.    Motions to Modify

[¶9]  James and Sandra both assert that the court made insufficient findings to support its conclusions about their incomes and abused its discretion when it modified the spousal support order.   We review modifications to spousal support for an abuse of discretion and a trial court's factual findings regarding substantial changes in circumstances and the parties' incomes for clear error.  *Ehret v. Ehret*, 2016 ME 43, ¶ 14, 135 A.3d 101; *Ellis v. Ellis*, 2008 ME 191, ¶ 15, 962 A.2d 328.  In a clear error review, we will vacate a factual finding only if there is no competent evidence in the record to support it, *Ehret*, 2016 ME 43, ¶ 14, 135 A.3d 101, and will not vacate a judgment simply because the evidence could have supported an alternative finding, *Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221.

[¶10]  In making factual findings, the court must consider all properly admitted evidence and then apply its independent judgment to that evidence in reaching its findings and conclusions.  *Klein v. Klein*, 2019 ME 85, ¶ 6, 208 A.3d

802 (quotation marks omitted). In doing so, a court is "free to accept or reject the testimony of individual witnesses in whole or in part, and it is free to reject testimony that is not contradicted if it finds that testimony incredible." *Id.*; *see also Theberge v. Theberge*, 2010 ME 132, ¶ 18, 9 A.3d 809 ("the trial court is not bound to accept any testimony or evidence as fact"). We do not substitute our judgment for that of the trial court as to the weight and credibility of testimony so long as there is evidence to rationally support the court's result. *Cashman v. Robertson*, 2019 ME 5, ¶ 12, 199 A.3d 1169.

[¶11] When a party's motion for further findings, M.R. Civ. P. 52(b), has been denied, we cannot infer findings from the evidence in the record. We confine our review to the court's explicit findings and determine whether those findings are supported by the record. *Ehret*, 2016 ME 43, ¶ 12, 135 A.3d 101; *Douglas v. Douglas*, 2012 ME 67, ¶¶ 26-27, 43 A.3d 965. Although the trial court's judgment must be "supported by express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the parties and any reviewing court of the basis for the decision," *Mooar v. Greenleaf*, 2018 ME 23, ¶ 7, 179 A.3d 307 (quotation marks omitted), "there is no requirement that a court identify the reasoning it uses to reach each finding of fact," *Theberge*, 2010 ME 132, ¶ 18, 9 A.3d 809. Given the nature and

scope of the Rule 52(b) motions in this case, we take this opportunity to reiterate that this rule authorizes the filing of only those post-judgment motions that are intended to elicit *additional or corrected* factual findings that were not contained in the court's initial judgment. These motions "should not be used to attempt to require the court to explain its reasoning in reaching a particular result or to reargue points that were contested at trial and have been resolved by the court's decision." *Wandishin v. Wandishin*, 2009 ME 73, ¶ 19, 976 A.2d 949.

### 1. James's Income

[¶12] Sandra argues that the court committed clear error when it determined James's income. Her argument is unpersuasive because the court's finding is supported by competent record evidence. Although Sandra presented evidence that James's income may have been higher than what the court found it to be, there was competent record evidence that supports the court's determination that James's income is $120,247. *See Williams v. Williams,* 645 A.2d 1118, 1119, 1123 (Me. 1994) (accepting an average of previous years' income); *Hale v. Hale*, 604 A.2d 38, 41-42 (Me. 1992) (applying average income from previous years determining spousal support obligations); *see also Wrenn v. Lewis,* 2003 ME 29, ¶ 19, 818 A.2d 1005 (imputing income

8

based on a range of potential earnings). Accordingly, there is no clear error in the court's determination of James's income.

2. Sandra's Income

[¶13] Sandra and James both argue that the court committed clear error in finding that Sandra's gross income is $76,000. The court determined, after "[s]orting through the credible testimony offered" by the forensic accountant, that Sandra's income is $76,000. It also found that Sandra's income was "greater than what [she] would have the court believe," and that Sandra "routinely under-reported . . . income."

[¶14] The trial court is the sole arbiter of witness credibility, *Cashman*, 2019 ME 5, ¶ 12, 199 A.3d 1169, and it is therefore free to accept or reject portions of the parties' testimony based on its credibility determinations and to give their testimony the weight it deems appropriate. *Klein*, 2019 ME 85, ¶ 6, 208 A.3d 802. The court was not required to find that Sandra's income fell within the ranges offered by any single witness. *Cf. Starrett v. Starrett*, 2014 ME 112, ¶ 12, 101 A.3d 435; *Theberge*, 2010 ME 132, ¶¶ 19-20, 9 A.3d 809. Because the court's determination of Sandra's income was supported by competent record evidence, the court did not clearly err in this determination, nor was it

required to explain its rationale.[3] *Miele v. Miele*, 2003 ME 113, ¶ 11, 832 A.2d 760 ("[A] court is not required to detail the rationale it uses to reach each finding of fact or conclusion of law.").

B.    Child Support

[¶15]  The parties agree that the court erred in its computations on the child support worksheet and supplemental worksheet and agree that, as a result of those erroneous calculations, the actual child support obligation derived from the worksheets is wrong.  We review child support and modification orders for an abuse of discretion and the factual findings used in calculating those orders for clear error.  *Sullivan v. Tardiff*, 2015 ME 121, ¶ 9, 124 A.3d 652.

[¶16]  As mentioned above, the court erroneously calculated the weekly child support obligation using the amount listed in the child support table for two children ($243) instead of three children ($187).  10-144 C.M.R. ch. 351, ch. 6, § 2.  In addition, although the child support order correctly lists the

---

[3] Because both parties' contentions that the court abused its discretion in modifying the spousal support order are predicated on their unpersuasive arguments that the court erred in determining their gross incomes, we affirm the court's modification order. *See Voter v. Voter*, 2015 ME 11, ¶ 18, 109 A.3d 626   James's further contention that Sandra's "inequitable conduct" supports terminating spousal support was not adopted by the trial court.  It expressly found that both parties experienced an increase in income and that an "equitable need" for support continues. *See* 19-A M.R.S. § 951-A(2)(A), (5)(E) (2018).

parties' proportion of income as sixty-one percent for James and thirty-nine percent for Sandra, *see* 19-A M.R.S. § 2006(5)(D-1)(4) (2018), the supplemental worksheet mistakenly allocates fifty-one percent of the applicable additional medical expenses to James and forty-nine percent to Sandra. 19-A M.R.S. § 2006(4) (2018).

[¶17] Further, the supplemental worksheet incorrectly allocates *James's share* of the children's uninsured orthodontic expenses between the parties, rather than allocating the *total* uninsured orthodontic expenses—as a result, a portion of James's obligation for those expenses was allocated to Sandra. 19-A M.R.S. § 2006(5)(D-1)(4) (2018). James presented evidence that he was paying $172.80 per month—the equivalent of $39.88 per week—as his share of the expenses, which is seventy-two percent of the total cost, and that Sandra's share is twenty-eight percent.[4] Sandra did not offer any evidence to the contrary. The supplemental worksheet indicates that the *total* weekly uninsured orthodontic obligation is $39.88; however, this amount, which is incorporated into the child support order and allocated between the parties, is

---

[4] James's testimony is consistent with the court's allocation of these expenses in the divorce judgment. By simple calculation, Sandra's twenty-eight percent share amounted to $67.20 per month and thus, the total uninsured orthodontic expense is $240 per month or $55.39 per week. Sandra represented to the court that she has a separate payment plan that deals directly with the provider.

only James's share.  From the evidence presented, the correct calculation of the total weekly uninsured orthodontic expense is $55.39.

[¶18]  Although these computations and allocations are clearly erroneous, they are arithmetic errors that do not require additional evidence to correct.  The child support order is vacated and the matter is remanded for the court to correct the errors consistent with this opinion.  *Foley v. Ziegler*, 2007 ME 127, ¶ 20, 931 A.2d 498 (remanding to correct error and recalculate child support); *Tardif v. Cutchin*, 617 A.2d 1032, 1032 (Me. 1992) (remanding to correct computational error in child support order).

[¶19]  Finally, we note that these errors are not solely attributable to the court.  The parties were unable to present a clear record or timely identify these errors for the court despite their numerous post-judgment filings.

C.     Attorney Fees

[¶20]  The court denied all requests for attorney fees, ordering that "[e]ach party shall be responsible for his or her own attorney fees and costs associated with this litigation."  We review a trial court's decision on attorney fees for an abuse of discretion.  *Urquhart v. Urquhart*, 2004 ME 103, ¶ 6, 854 A.2d 193.  A court "may order a party to pay another party's attorney fees based

on the parties' relative financial ability to pay the costs of litigation as long as the award is ultimately fair under the totality of the circumstances." *Id.*

[¶21] Sandra's motion for further findings did not address or propose additional findings related to attorney fees. Accordingly, we assume that the court made sufficient findings to support its denial of her request for fees. *Ellis*, 2008 ME 191, ¶ 19, 962 A.2d 328. This assumption is confirmed by the court's findings that Sandra's income is "greater than what [she] would have the court believe" and "higher than that [which she] claimed" throughout the litigation. The court's findings on this point more than support the denial of her request for fees. *Id.* ¶¶ 26-27.

[¶22] Because James's timely Rule 52(b) motion expressly requesting findings related to attorney fees was denied, our review is limited to the facts explicitly found in the court's order. *McMahon v. McMahon*, 2019 ME 11, ¶ 3, 200 A.3d 789. That limitation does not, however, prevent us from concluding that the trial court's express finding of the parties' incomes provided it with a sufficient basis to determine that each party could shoulder his or her own costs of litigation. *See id.* ¶ 14. Although the court did not explicitly connect its findings of the parties' income to its order that "[e]ach party shall be responsible for" his or her own fees, the "court is not required to detail the

rationale it uses to reach each finding of fact or conclusion of law." *Berntsen v. Berntsen*, 2017 ME 111, ¶ 21, 163 A.3d 820. The court did not abuse its discretion when it denied James's request for fees, and it is not required to elaborate. *Wandishin*, 2009 ME 73, ¶ 19, 976 A.2d 949; *Dargie v. Dargie*, 2001 ME 127, ¶ 3, 778 A.2d 353.

D.     Self-effectuating Order

[¶23] Finally, we decline the parties' invitation to adopt a new rule that a trial court abuses its discretion when it declines, upon the request of both parties, to issue a self-effectuating child support order.[5] We have recommended that trial courts, magistrates, counsel, and parties "should focus on developing orders that explicitly specify the adjustments to be effectuated when support obligations cease for each child," but only in those cases "where changes *should* occur without any return to court." *Higgins v. Wood*, 2018 ME 88, ¶ 41, 189 A.3d 724 (emphasis added). Self-effectuating orders are not

---

[5] We have previously described the term "self-effectuating" as

> a provision in a judgment that explicitly articulates a change in a support obligation on an identified date or upon the occurrence of a specific event, such that the new, explicitly identified amount takes immediate effect and is enforceable. In other words, we have substituted the term "self-effectuating" for the longer description used previously for a "self-executing provision that automatically amends a court order" upon the occurrence of a specific event or the arrival of a specific date.

*Higgins v. Wood*, 2018 ME 88, ¶ 15, 189 A.3d 724.

appropriate where, as here, there are three children, the oldest of whom is thirteen years old, and the parties' incomes have demonstrated a significant degree of fluidity.

The entry is:

> Child support order vacated. Remanded for recalculation of the child support obligation consistent with this opinion. Judgment affirmed in all other respects.

---

Gene R. Libby, Esq., and Keith P. Richard, Esq., Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant James A. Sulikowski

Janet K. Kantz, Esq., Vincent, Kantz, Pittman & Thompson, LLC, Portland, for appellee Sandra L. Sulikowski

Biddeford District Court docket number FM-2013-282
FOR CLERK REFERENCE ONLY